(Decided 25th February, 1882.)

---

## WILLIAM F. GOODE *vs.* ANDREW MARTIN.

*Action for Damages against the Owner of Dogs for Injuries from being Bitten by them—Fierceness of the Dogs, and the Owner's Knowledge thereof—Evidence—Presumptions.*

In order to render the owner liable in damages to any one bitten by his dog, it must be proved not only that the dog was fierce, but that his owner had knowledge that he was fierce.

Such knowledge in the owner may be presumed from the fact, shown in an action for damages against him for injuries sustained from being bitten by them, that he was accustomed to keep his dogs tied during the day-time, and let them loose at night; and the fact testified to by himself, that his dogs had not been chained at an earlier hour on the day the person was bitten, because he had staid in bed later that day than usual, tended to show that he knew it was unsafe to leave them unchained at a time it was likely persons would be visiting his house; and he knew the person bitten was in the habit of coming to his house at that time. Evidence that the owner's wife asked their daughter (—who let the person bitten into the yard, and told him, that she would not let the dogs bite him—) "why she had not tied the dogs," was such presumed knowledge in the wife that the dogs were fierce, as could not be

imputed as knowledge to her husband; nor was such knowledge in the daughter presumable, as could be imputed to the owner.

Evidence tending to prove the temper and vicious disposition of the dogs and the owner's knowledge thereof, should be left to the jury.

APPEAL from the Circuit Court of Baltimore County.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., MILLER, ALVEY, GRASON, ROBINSON, RITCHIE and STONE, J.

*A. W. Perrie*, and *John J. Yellott*, for the appellant.

*J. F. C. Talbott*, and *William Grason*, for the appellee.

GRASON, J., delivered the opinion of the Court.

At the trial of this case in the Court below, an instruction was granted, at the instance of the defendant, that there was no evidence legally sufficient to entitle the plaintiff to recover; and the verdict and judgment being in favor of the defendant, the plaintiff appealed, and the only question presented for our consideration is, whether there was any evidence offered by the plaintiff legally sufficient to be left to the determination of the jury.

The suit was instituted to recover from the defendant, damages for the loss of the services of the plaintiff's son, who had been bitten by the defendant's dogs, and for medical attendance and medicines which were rendered necessary by the son's injuries. It was proved that the defendant, who lived in a thickly settled neighborhood, and was a blacksmith, kept two dogs, a large New Foundland and a small terrier, for the protection of his property, and that he kept them tied during the day, and turned them loose in his yard at night. It was also proved that the defendant sold milk to some of his neigh-

Goode *vs.* Martin.

bors, when he had more than sufficient for the use of his family, and, among others, to the plaintiff, who was in the habit of sending for it by his son, who was about twelve years of age, and sometimes by his daughter, who was still younger, and that, on the Sunday morning, when the boy was bitten, he was sent for the milk, and found defendant's gate fastened so that he could not open it, and that he shook and rattled the gate, in order to attract the attention of some of the defendant's family, and that this caused the dogs to bark at him. Becoming alarmed, he turned to leave the place, when the defendant's daughter made her appearance, and called him back, and told him that she would not let the dogs bite him. She then put the dogs in the blacksmith shop, opened the gate and the boy entered the premises, and went with her upon the porch of the dwelling, where she left him, while she entered the house to get him the milk. While he was awaiting her return, the dogs came from the shop and upon the porch, and the large dog began to growl and jump at him. He became frightened and started to leave the porch, when the dogs attacked him, and both bit him, making wounds upon his hand, arm and hip. The defendant's daughter came out and took the dogs off, and the boy took refuge in defendant's kitchen. The defendant and his wife, hearing the noise, came down undressed, and the wife asked her daughter why the dogs had not been tied, and directed her to tie them.

The defendant said that he tied the dogs every morning, but that he had remained later in bed that morning, and therefore, had not tied them as early as usual. David Price proved that he had worked for defendant two months in the spring of 1880, and that defendant had two dogs, which he kept tied during the day, but that he did not know what he did with them at night, as witness was not there at night, nor did he know for what reason they were so kept tied. He also proved that when he first went to

Goode *vs.* Martin.

defendant's to work, if he went into that part of the yard where the dogs were tied, and made any "*fumbling*," the dog would bark and run at him the length of his chain, until he got acquainted with him, which was a month or more after he went there, and that the dog was rather fierce. The plaintiff testified to substantially the same facts as had been proved by his wife; that his son was bitten on the finger, arm and hip, and was considerably bruised, and his clothes much torn, and that the doctor had been to see him four times, and that medicines had been procured, but that the loss of his son's services was nothing. There was no proof tending to show that the dogs had ever bitten any one before, or that the defendant had any knowledge that his dogs had been accustomed to attack or bite, or that they had made any attempt to get at the witness Price, in the manner testified to by him.

In order to render the owner liable in damages to any one bitten by his dog, it must be proved not only that the dog was fierce, but that his owner had knowledge that he was fierce. To this effect are all the authorities. See *Cord vs. Case,* 57 *Eng. C. L. Reps.,* 622 ; *Hogan vs. Sharpe,* 32 *Eng. C. L. Reps.,* 720; *Beck vs. Dyson,* 4 *Camp.,* 108; *Thomas vs. Morgan,* 2 *Camp., Mees. & Roscoe,* 496; *Brock vs. Copeland,* 1 *Espinasse,* 203 ; *Sarch vs. Blackburn, Moody & Malkin,* 505. And to the same effect are the cases cited in the appellant's brief, and he admits the law so to be. But he contends that the question asked by defendant's wife of her daughter "why she had not tied the dogs," and her direction to her to tie them, was evidence that the wife knew that the dogs were fierce, and that her knowledge of that fact ought to be imputed to her husband. He also contends that as the defendant's daughter invited the plaintiff's son into the yard, and told him that she would not let the dogs bite him ; drove them into the shop and had charge of the milk department;

was the daughter and servant of the defendant, and had charge of the dogs and knew that they were fierce, that her knowledge also was the knowledge of her father and employer. It is true that, in the case of *Baldwin vs. Costella*, 26 *Law Times, U. S.*, 707, it was held that, where a servant knew that a dog was fierce and accustomed to bite, that the knowledge of the servant was to be imputed to the master and owner of the dog; but it was so held solely because the dog was committed to the care and management of the servant, who was the coachman and kept the dog at the stables. In this case there is no proof whatever that any one had the care and management of the defendant's dogs other than himself, as he swears that *he* tied them every morning, and assigns as a reason why he had not tied them the morning the boy was bitten, that he had remained in bed longer than usual. Neither is there any proof that defendant's daughter had charge of the milk business; the proof only showing that, on the morning in question, she had volunteered to get the milk for the boy and to keep the dogs from biting him, she being then the only member of defendant's family who was down stairs. The proof does not show that the daughter was either the servant or agent of the defendant in the respects contended for by the appellant's counsel.

Nor is there any evidence to prove that defendant's wife had any knowledge that the dogs were fierce and vicious, further than what may be inferred from what she said to her daughter, after finding that the dogs had attacked and bitten the boy. She may have very naturally asked her daughter why she had not tied the dogs, and given her directions to tie them, without having had any previous knowledge that they would bite. But even if she had had such knowledge, her knowledge could not be imputed to the defendant. In the case of *Gladman vs. Johnson*, 15 *Law Times, U. S.*, 476, it was held that where a wife assisted her husband in his milk business, and a

customer had been bitten and had informed her of the fact and requested her to inform her husband, it must be presumed that she had given the information as requested and that he, therefore, had knowledge that his dog was accustomed to bite. But the case before us is very different from that. Here we are asked to presume that the wife had knowledge of the fact, and then further to presume that she had communicated such knowledge to her husband; thus raising one presumption upon another. For this no authority has been or can be furnished.

But we think the appellant is right in his contention that the defendant may be presumed to have had a knowledge that his dogs were fierce and dangerous, from the fact that he was accustomed to keep them tied during the day-time. In *Perry vs. Jones*, 1 *Espinasse*, 452, Lord KENYON held that, from the fact that the owner kept his dog tied and did not permit him to run at large, it must be presumed that he had knowledge that the dog was vicious, unruly and not safe to be permitted to go abroad. And in *Buckley vs. Leonard*, 4 *Denio.*, 501, it was held that the fact that the owner usually, in the day-time kept his dog confined, and in the night kept him in his store, was evidence that he was fully aware that the safety of his neighbors would be endangered by allowing him to be at large. So, in the case now before us, we think that the fact that the appellee kept his dogs tied during the day and let them loose at night, furnishes proof that he knew it would endanger his neighbors to permit them to be unfastened. His statement that the dogs had not been chained at an earlier hour, on the day the boy was bitten, because he, the appellee, had remained in bed later that day than usual, is also proof tending to show that he knew that it was unsafe to permit them to be unchained at a time when it was likely that persons would be visiting his house; and he also knew that this very boy was in the habit of coming to his house about that time of the day

for the purpose of obtaining milk.   This evidence ought to have been left to the jury as tending to prove the temper and vicious disposition of the dogs, and the knowledge of the appellee thereof, and it was therefore error in the Judge of the Circuit Court to take the case from the jury, and the judgment appealed from will be reversed and a new trial awarded.

*Judgment reversed, and*
*new trial ordered.*

(Decided 28th February, 1882.)