MARY E. TWIGG, and JESSE TWIGG, her husband *vs.* ANDREW J. RYLAND.

*Liability of the keeper of a Ferocious dog for Injury done by it—Averment of Negligence—Burden of Proof—Notice to charge Owner or keeper of Vicious dog—Master and Servant—When knowledge of the Servant to be imputed to the Master.*

Any person who keeps an animal *mansuetæ naturæ* of a ferocious or vicious disposition, accustomed to attack and bite mankind, knowing that it is possessed of such disposition or vicious propensity, is bound at his peril to restrain such animal; and if he allows it to escape or go at large he is liable for all the injury it may inflict by attacking persons in consequence of such ferocious propensity.

And the keeper of such animal is *prima facie* liable in an action on the case, at the suit of any person attacked and injured by it, without any averment of negligence or default in the securing or taking care of it.

The burden of proving that the owner or keeper of an animal *mansuetæ naturæ* had knowledge of its mischievous propensities, is on the plaintiff, but otherwise if it were *feræ naturæ*.

The notice which will charge the owner or keeper with liability for the vicious conduct of the animal, must be notice that it was inclined to do the particular mischief which was done. And the question in each case is, whether the notice was sufficient to put

Twigg *vs.* Ryland.

the owner or keeper on his guard, and to require him to anticipate the injury that was actually done.

If the owner of a dog place it in the charge and keeping of a servant, the servant's knowledge of the dog's ferocious disposition is the knowledge of the master; but the knowledge of any servant that a dog may follow or be with about the premises where he is employed, as to the disposition of the dog, is not to be imputed to the master.

APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

*First Exception.*—Stated in the opinion of the Court.

*Second Exception.*—The plaintiffs prayed the Court to instruct the jury as follows:

1. That if the jury believe from the evidence in the cause, that Andrew J. Ryland, the defendant, owned or kept on his premises, in the City of Cumberland, Md., a certain dog, and shall further find that said dog attacked and inflicted the injuries upon Mary E. Twigg, as testified to, and detailed by the witnesses in the cause, then the plaintiffs are entitled to recover such proper damages as the jury may consider commensurate to the injuries thereby inflicted and sustained; provided they shall further find, that the said dog was of a ferocious disposition, and known to be so to the defendant, either of his own knowledge, or by having notice of the fact communicated to him by others, before the injury to the plaintiff.

2. That in passing upon the question of knowledge of the defendant of the vicious character of the dog, the jury may find that the defendant had such knowledge, if they believe that he knew, or was notified, prior to the attack on said Mary, if they find such attack, of one or more attacks by said dog on other persons.

3. That in passing upon the question of the ferocious disposition of the dog referred to in the first prayer, it is

competent for the jury to take into consideration the place and manner of the attack he made upon Mary E. Twigg, if they shall believe he made said attack; and further, that it is not necessary that the jury shall find that the said dog had actually bitten any one before he attacked the said Mary, or that any actual injury had ever been committed by him; provided they find that he had evinced a savage disposition by attempting to bite or injure persons.

4. That if the jury believe from the evidence in the cause, that Lloyd Burgee was in the employ of the defendant as driver of his delivery wagons, and for the purpose of attending to things generally in and about his slaughter-yard, and that the said Burgee had or was allowed to assume the general management of the dog referred to in the plaintiffs' first prayer; and if they further believe, that the said Burgee knew or had knowledge of the ferocious habits and vicious propensities of said dog, then said knowledge on his part is evidence from which the jury may infer knowledge of said habits on the part of the defendant.

5. That if the jury shall believe from the evidence that Lloyd Burgee was in the employ of the defendant before and at the time the plaintiff, Mary E. Twigg, received the injury testified to by the witnesses, and that his duties were to help at the defendant's slaughter house in the killing of cattle, &c., and to drive the defendant's delivery wagon, and to be generally useful about the premises of the defendant, and that the dog in question was generally with the said Burgee at the slaughter house, or with him when driving the wagon, or on the street, and that the dog was kept at the slaughter house by the defendant to watch and guard the defendant's premises and property, and that the said Burgee knew before the plaintiff, Mary E. Twigg, was injured by said dog, if they find she was injured by said dog, that said dog was a vicious and dangerous dog, the

Twigg *vs.* Ryland.

presumption of law, as against the defendant, is, that he, the defendant, knew that the dog was of a vicious, dangerous disposition.

6. That if the jury shall find a verdict for the plaintiffs, then they, in estimating the damages, are to consider the health and condition of the said Mary, before the injuries complained of, as compared with her present condition, in consequence of the said injuries, and whether they are in their nature permanent, and how far they are calculated to disable her from engaging in those business pursuits, for which, in the absence of such injuries, she would have been qualified, and also the physical and mental suffering to which she has been subjected by reason of said injuries, and to allow such damages as in their opinion will be a fair and just compensation for such injuries.

7. That there is no such sufficient evidence in this cause to show that the plaintiff, Mary E. Twigg, contributed by her own negligence to the bringing about of the injury complained of, as will constitute a defence to this action.

The defendant offered six prayers, of which the following were granted:

1. In order to enable the plaintiffs to recover in this action, they must satisfy the jury, first, that the dog which injured Mrs. Twigg, was the property of the defendant, or under his control and management, or that the duty of keeping said dog had been assumed by him; secondly, that the dog was of a ferocious and vicious disposition; and thirdly, that his ferocious and vicious disposition was known to the defendant prior to the injury complained of. And unless the jury find each and all of these propositions in the affirmative, their verdict must be for the defendant.

3. If the jury find that the injury complained of in the plaintiffs' declaration, was done on the premises of Mrs. Twigg, and not on the premises of the defendant, and that her premises, and those of the defendant are half a mile apart in the City of Cumberland, and that Mrs. Twigg

Twigg *vs.* Ryland.

knew or believed that the dog was of a vicious disposition, (if the jury believe he was a vicious dog,) and with that knowledge or belief, had the dog with and about her on many occasions, both on the streets of Cumberland, and at her own house, and had enticed said dog to follow her and visit her own house, without the knowledge of the defendant, and that, at the time of said injury, the dog was at her house, because he had been encouraged and enticed to visit said house by the plaintiff and without the knowledge of the defendant, then the defendant is not responsible for the injury done to Mrs. Twigg by the dog, and the plaintiffs cannot recover in this action.

4. That if the jury believe from the evidence in the cause, that the dog which committed the injury complained of in this case, was at the time the exclusive property of Norman B. Ryland, the defendant's son, and that said Norman had owned its mother, and had raised said dog from a pup, and that said Norman had sole charge, custody and control of said dog, and that the defendant never had the custody, care or control of said dog; and that said Norman was, at the time, above the age of twenty-one years, and was in no manner under the control of, or subject to, the defendant, and that the injury complained of occurred off the premises of the defendant, and upon the premises of the plaintiff, Mary E. Twigg, a half mile apart, that then the defendant is not liable in this action, and the plaintiffs cannot recover, although they may find that the defendant allowed said dog to be kept by his son on or about his premises.

The Court, (SYESTER and HOFFMAN, J.,) granted the first, second, third and sixth prayers of the plaintiffs, and rejected their fourth, fifth and seventh. It granted the defendant's first, third and fourth prayers, and refused his second, fifth and sixth. The plaintiffs excepted, and the verdict and judgment being for the defendant, they appealed.

Twigg *vs.* Ryland.

The cause was argued before ALVEY, C. J., STONE, MIL-LER, ROBINSON, IRVING, and BRYAN, J.

*J. W. Thomas,* for the appellants.

*William M. Price,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The appellants in this case were the plaintiffs below, and they brought the action to recover of the defendant for injuries received by the female plaintiff by the bite of a dog, alleged to have belonged to or to have been kept by the defendant, with knowledge that the dog was ferocious and dangerous.

In regard to the law of the case, it is well settled, that if any person keeps an animal *mansuetæ naturæ,* of a ferocious or vicious disposition, accustomed to bite or attack mankind, knowing that it is possessed of such disposition or vicious propensity, he is bound to restrain such animal at his peril; and if he allows it to escape or go at large, he is liable for all the injury it may inflict by attacking persons in consequence of such ferocious propensity. As declared by the Queen's Bench, in *May vs. Burdett,* 9 *Q. B.,* 101, "Whoever keeps an animal accustomed to attack and bite mankind, with knowledge that it is so accustomed, is, *prima facie,* liable in an action on the case, at the suit of any person attacked and injured by the animal, without any averment of negligence or default in the securing or taking care of it. · The gist of the action is the keeping the animal after knowledge of its mischievous propensities." The owner or keeper of the dog or other domestic animal must be shown to have had knowledge of its disposition to commit such injury, and the burden of proving this fact is on the plaintiff, though it would be otherwise if the animal was of a nature to be fierce and untamable, such as bears,

tigers, etc. *Spring Co. vs. Edgar*, 99 *U. S.*, 654. The notice which will charge the owner or keeper with liability for the vicious conduct of the animal must be notice that it was inclined to do the particular mischief that has been done. Hence, notice that a dog is ferociously disposed towards cattle, is no notice that he will attack persons. It is not necessary to show that the owner or keeper of a vicious dog has seen the animal attack mankind ; but it is sufficient to show that the vicious propensity of the animal has, in some way, been brought to the knowledge of the owner or keeper, so as to admonish him to take the necessary precaution to prevent injury in the future. Hence the question in each case is whether the notice was sufficient to put the owner or keeper on his guard, and to require him to anticipate the injury that has actually been done. And this duty of guarding against the vicious propensity of a dog, or other domestic animal, is imposed upon the keeper thereof, irrespective of the fact of ownership. *Cooley on Torts*, 344.

The question presented by the first bill of exception is as to the admissibility of evidence to prove the *scienter.* After giving evidence of the injury inflicted by the dog, the plaintiffs gave evidence to prove that the defendant was a butcher in Cumberland, and that he had about his premises a colored man as an assistant, who drove the meat wagon and delivered meat to the customers of the defendant, and that the dog was frequently with him, and generally followed him. They then offered to prove that this colored man knew that the dog was vicious and dangerous, and was disposed to attack and bite and injure persons ; and that such colored man, while in the employ of the defendant, had told one of the plaintiffs' witnesses that he had made known to the defendant, before the injury to the plaintiff, that the dog was of a vicious disposition, and had attacked and bitten other persons. To this offer the defendant objected, and the objection was sustained by the Court, and, as we think, rightly sustained.

It is very true, as shown by the authorities, that if the owner of a dog place it in the charge and keeping of a servant, the servant's knowledge of the dog's ferocious disposition is the knowledge of the master. But it is not true, that the knowledge of any servant that a dog may follow, or be with about the premises where he is employed, as to the disposition of the dog, is to be imputed to the master. This is clear upon all the authorities.

The case that goes as far, upon this question, as any other to be found in the reports, and which has been mainly relied on by the appellants, is that of *Gladman vs. Johnson*, 36 *L. J.*, (*C. P.*) 153, where notice of the mischievous propensity of the dog, given to the wife of the defendant, who attended to the business of her husband in his absence, for the purpose of being communicated to the husband, was held to be *some* evidence of a *scienter* to be considered by the jury. But in delivering judgment in that case, BOVILL, C. J., says: "I am not prepared to assent to the proposition that notice to an ordinary servant, or even to a wife, would, in all cases, be sufficient to fix the defendant, in such an action as this, with knowledge of the mischievous propensity of the dog. But here it appears that the wife attended to the milk business, which was carried on upon the premises where the dog was kept, and that a formal complaint as to that dog was made to the wife when on the premises, and for the purpose of being communicated to her husband. It may be that this is but slight evidence of the *scienter*, but the only question is, whether it is evidence of it. I think it is." This case was referred to and commented upon in *Goode vs. Martin*, 57 *Md.*, 610, 611. And in the case of *Stiles vs. Cardiff Steam Nav. Co.*, 33 *L. J.*, (*Q. B.*) 319, where a similar question arose, the Lord Chief Justice said that notice of the vicious propensity of the dog given to porters or servants employed about the premises, would not suffice ; but that, if brought home to a person who had

the general management of the yard, in which the defendants themselves could not be supposed to be acting, and who had authority to say whether a dog should be kept there or not, or whether it should be chained up or not, it would be otherwise. The case of *Baldwin vs. Casella*, *L. R.*, 7 *Exch.*, 325, proceeded upon the ground that the defendant had deputed to his coachman the care and control of the dog, and therefore a notice to him of the vicious nature or propensity of the dog was notice to the master. And there is nothing in the case of *Appleby vs. Percy*, *L. R.*, 9 *Com. P.*, 647, that in any way contravenes the principle of the previous cases, to which we have referred. We are clearly of opinion, therefore, upon the facts as stated in the bill of exception, that the knowledge, whatever it may have been, of the negro man in regard to the propensity of the dog was not legally imputable to the defendant; and especially were not the declarations of the negro man evidence against the defendant. The man himself should have been called as a witness.

Of the several prayers offered by the plaintiffs, those granted would seem to have given the plaintiffs the benefit of all the law to which they were entitled, and that too in a most liberal form; and those rejected were clearly erroneous, and therefore properly rejected. The fourth and fifth prayers, rejected by the Court, appeared to have been based entirely upon the evidence that was offered, but which was excluded by the Court, upon objection. The evidence not being before the jury, of course it could not be made the basis of an instruction to them. Besides, those prayers did not even require the jury to find that the vicious disposition of the dog was to attack and injure mankind; but simply that the dog was of vicious or dangerous propensities. This alone was a defect which made them misleading, and therefore required their rejection. *Judge vs. Cox*, 1 *Stark.*, 285; *Wood on the Law of Nuis.*, sec. 761.

The seventh prayer asked the Court to say that there was no sufficient evidence, to be submitted to the jury, of any contributory negligence on the part of the female plaintiff, in bringing about the injury complained of, to defeat the right to recover. This prayer was properly rejected. For although the evidence is manifestly very meagrely and defectively set out in the record, as to the precise circumstances of the injury, yet it is stated in a general way, that evidence was given "tending to prove that the plaintiff, Mary, knew the said dog, and knew that he was a dog liable to attack persons, and was of a fierce disposition, and that she had *encouraged* the dog to be in and about her premises prior to said injuries." If she had cultivated a familiarity with the dog, and encouraged him to come to her house and be about her, with knowledge of his disposition, it was certainly evidence to go to the jury upon the subject of contributory negligence on her part, and the Court was therefore right in refusing the prayer.

The first prayer on the part of the defendant, which was granted, we do not understand to be seriously questioned. But the third and fourth of the prayers of the defendant, which were granted by the Court, are questioned by the plaintiffs. The third prayer sought to preclude the right to recover upon the ground of contributory negligence on the part of the female plaintiff Mary, and if the facts therein enumerated were found by the jury, they certainly constituted a good ground of defence. *Cooley on Torts,* 346.

In granting the fourth prayer the jury were instructed, that if they found that the dog committing the injury did not belong to the defendant, but was at the time the exclusive property of the defendant's son, a young man over twenty-one years of age, and that the latter "had sole charge, custody and control of said dog, and that the defendant never had the custody, care or control of said dog;

and that the injury complained of occurred off the premises of the defendant, and upon the premises of the plaintiff, Mary E., a half mile away," then the defendant was not liable; although the jury might "find that the defendant allowed said dog to be kept by his son on or about his premises." This instruction, we think, unobjectionable. The defendant, to be liable for the vicious conduct of the dog, must have been either owner or keeper of the animal, or had some control of him. If he was neither owner nor keeper, and had no control of the dog, and the injury was done away from his premises, and out of his presence, it is difficult to perceive upon what principle he could be held liable. In the case of *Auchmuty vs. Ham,* 1 *Denio,* 495, where the damage was done by the dog away from the premises of the defendant, it was held not to be sufficient to render the defendant liable that the dog belonged to the defendant's hired man servant, who kept the dog at the defendant's house during the day, but took him away at night. The principle of that case would seem to apply fully to this, and be an authority for granting the fourth prayer of the defendant, if any authority were needed.

Finding no error in the rulings of the Court below, we must affirm the judgment.

*Judgment affirmed.*