# ANNA BACHMAN

*vs.*

## JOHN L. CLARK, Infant, by James Clark, His Father and Next Friend.

*Dogs: liability of owner, for injuries by——. Evidence: credibility; question for jury.*

At common law, the owner of a dog is not liable for injuries caused by it, unless it had vicious propensities and the fact had been brought to the notice of the owner. p. 247

But when it is established that a dog is of a vicious disposition, and that the owner has knowledge of the fact, the same responsibility attaches to the owner to keep it from doing mischief as in the case of any other animal naturally ferocious; and in order to hold the owner responsible proof of negligence on his part is not necessary. p. 247

In order to render the owner of a dog liable in damages to one bitten by the dog, it is necessary to show that the dog had a vicious propensity and that such vicious propensity was known to the owner. p. 249

But the owner's knowledge need only be such as to put him on his guard, and to anticipate, as an ordinarily prudent person would do, the conduct of the dog which resulted in the injury complained of. p. 250

Where there is evidence legally sufficient to prove the issue, its weight and credibility are questions for the jury, and not for the court. p. 249

*Decided April 5th, 1916.*

Appeal from the Baltimore City Court. (Gorter, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Pattison, Urner, Stockbridge and Constable, JJ.

*Isaac Lobe Straus,* for the appellant.

*Israel B. Brodie* (with whom was *Harry B. Wolf* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

In this case the infant appellee was attacked and bitten by a dog of the appellant and suit was brought in the Baltimore City Court to recover damages for the personal injuries resulting therefrom. A verdict was rendered in favor of the plaintiff for two hundred dollars, and a judgment was entered thereon, from which this appeal is taken.

The record discloses that the appellee, John L. Clark, a boy ten years of age was at the time of the accident, on May 18, 1914, living with his parents on Wilkens avenue in the City of Baltimore. The accident occurred about eight o'clock in the evening and when bitten the boy was standing by a pole on the north side of Wilkens avenue about a block from his home, and opposite or nearly opposite the defendant's house. He was playing with some of his young friends when the dog came across from the defendant's yard, and as he describes it in his testimony, grabbed him by the leg and bit him several times. The accident is probably best described by the witness Johnson, a butcher, residing at Violetsville, Baltimore County, who testified, "that (on the evening of the accident) in walking down Wilkens avenue he saw boys playing on the north side of the street and the dog ran out through a couple of palings in the fence, ran across the street, knocked the plaintiff down, jumped on him and was biting him. When witness got there the dog had bitten plaintiff two or three times and then had him by right thigh; plaintiff was lying back on pavement; witness tried to get the dog off by choking her; being unsuccessful, he picked up a scantling and told the plaintiff to take his hands away from the dog's head, and the plaintiff pulled his hands away and the dog let go and as she let go she started up to

the region of the stomach and before she got up (to the stomach) he, witness knocked her over, that a companion of witness picked the plaintiff up and carried him to his house," and from his home he was carried to St. Agnes Hospital, and subsequently took the Pasteur treatment at the Mercy Hospital. The mother of the plaintiff in her testimony stated that when her son was brought home he was "unconscious," and "was in such a condition that she did not know whether he was living or dead. * * * Blood all over him." The dog was spoken of by some of the witnesses as a bull dog, but her owner and others said she was a bull terrier.

Charles Hesterberg one of the boys who was playing with the plaintiff at the time of the accident when produced on the part of the defendant testified that he saw the dog when she was running across the street just before the accident, and that she first jumped upon Edward Vogelsang, the grandson of the defendant, "to be petted" as witness said, then quickly jumped on the plaintiff and when she did so he pushed her off with his elbow when she again jumped on him and this time he saw the dog biting the boy while lying upon the ground and continued to bite him until she was struck and killed by the witness Johnson.

At common law, the owner of a dog is not liable for injuries caused by it, unless it has a vicious propensity and notice of that fact is brought home to him. But when it is once established that the dog is of a vicious nature, and that the person owning or keeping it has knowledge of that fact, the same responsibility attaches to the owner to keep it from doing mischief as the keeper of an animal naturally ferocious would be subject to, and proof of negligence on the part of the owner of the dog is unnecessary. 3 C. J. 97. This is the recognized and well settled law of this State. *Goode v. Martin,* 57 Md. 606; *Twigg v. Ryland,* 62 Md. 380; *Buck v. Brady,* 110 Md. 568.

At the trial of this case in the Court below, the plaintiff offered but one prayer, which was granted. The defendant offered nine prayers. The first four of these were rejected,

the others were granted.    The rejected prayers asked that
the case be taken from the jury; the 1st, for want of legally
sufficient evidence; the 2nd, for want of such evidence *under
the pleading;* the 3rd, for want of legally sufficient evidence
of the dog's alleged vicious propensity; and 4th, because
there was no legally sufficient evidence that the defendant
knew that the dog had a vicious propensity.

It must first be shown, in order to render the owner liable
for damages to one bitten by his dog, that the dog had a
vicious propensity, and second that such vicious propensity
or inclination was known to its owner.    But the owner's
knowledge of the dog's vicious propensity need only be such
as to put him on his guard and to require him as an ordinary
prudent person to anticipate the act or conduct of the dog
resulting in the injury for which the owner is sought to be
held liable.    3 C. J. 96.    The owner's knowledge of the
propensity of the dog may be, and most generally is, ac-
quired from its conduct and behavior, although such knowl-
edge may be acquired from other persons, and in some cases
the knowledge of others is imputed to the owner.

With this statement of the law we are first to consider and
determine whether there is evidence in the case legally suffi-
cient to go to the jury tending to show that the dog of the
defendant had a propensity or inclination to bite mankind.

We have no difficulty in deciding this question upon the
facts found in the record, including those that we have al-
ready stated in giving the detailed account of the dog's at-
tack upon the plaintiff.

James Rollins, who also lived on Wilkens avenue, testi-
fied that some time prior to the accident: "I met this dog
on the bridge and it came at me, bristled up and growled at
me.    I was afraid it was going to bite me and I stooped
down and picked up a stone and the dog turned and went off
on the other side of the street."

The boy McClary testified that on one accasion, about a
month before the accident, he was standing against the fence
that inclosed the yard of the defendant, with his coat extend-

ing through the palings and the dog came up and caught
him by the coat and growled while holding it and when he
attempted to pull away from him his coat was torn.

Charles Ruff, another boy, testified that the dog on one
occasion, about two months before the plaintiff was bitten,
tried to bite him. The witness and Edward Vogelsang, who
had the dog by a strap, were upon a neighbor's porch and as
he started to leave the porch the dog grabbed him by the
pants, but Edward pulled him off by means of the strap.
He further stated that when the dog came near him he acted
like he wanted to bite him.

The mother of the plaintiff also testified that she had seen
the dog run out from the premises of its owner "and grab
persons upon the street."

This evidence was legally sufficient to go to the jury tend-
ing to show that the dog had a propensity or inclination to
bite mankind, and the truth of such evidence must be as-
sumed in deciding the question before us. But when sub-
mitted to the jury its truth and weight were to be considered
and determined by it.

The next question to be considered is whether the record
contains evidence legally sufficient to be submitted to the
jury tending to show that such vicious propensity or inclina-
tion of the dog was known to the defendant, its owner.

Edward Vogelsang, the grandson of the defendant, testified
that as soon as the dog heard people coming in the gate at
the home of his grandmother, she would jump on them, "and
that when they would pat her she would go down," that this
occurred with a great many people who came to the defend-
ant's home and that his grandmother observed such conduct
on the part of the dog when she would go to the door to
admit visitors to her house. That the dog at such times
would jump upon them just as she did upon the plaintiff on
the evening of the accident, and in his testimony he said
that the dog jumped upon the chest of the plaintiff. The
defendant, her daughter and grandson all spoke of the fact
that the dog would become excited, bark and run up and

down the fence, attempting to bite the stick thrust between the palings by the boys upon the outside and that this was a frequent occurrence. The witness Ogle testified that at such times the dog would growl. The defendant in her testimony stated that the dog was always kept within the inclosures except when taken out by one of her sons or her grandson, but never without a strap. The defendant, as well as her daughter and grandson, testified that they attributed the conduct of the dog to playfulness, and the defendant also stated that it was from fear that she might lose the dog that she kept her in the inclosures at home and did not permit her to go out without the strap.

We think, however, this evidence was legally sufficient to go to the jury as tending to show the defendant's knowledge of the dog's vicious propensity or inclination to bite mankind. It was properly submitted to the jury as tending to show that the conduct of the dog, which was known to the defendant, was sufficient to put her on guard or require her as an ordinary prudent person to anticipate the act of the dog resulting in the injury to the plaintiff.

There are three exceptions found in the record relating to the evidence. The first exception is waived. In the second exception witness Vogelsang was asked, "as far as you can tell of what you know of the dog and what you saw happen, did he ever hurt or try to hurt anybody?" This question was objected to by the plaintiff and the objection was sustained. The witness had previously said that the dog "never hurt any one before she hurt the plaintiff, never tried to hurt any one as far as he knew." Therefore, there was no injury done the defendant by this ruling, and we find no reversible error in the ruling of the Court upon the third exception.

The judgment of the Court below will be affirmed.

*Judgment affirmed, with costs to the appellee.*