MAY COMPANY *v.* ANNA DRURY.
[No. 22, October Term, 1930.]

144

*Decided January 14th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Fendall Marbury,* with whom were *William L. Marbury* and *L. Wethered Barroll* on the brief, for the appellant.

*Allan H. Fisher,* with whom were *Fisher & Fisher* on the brief, for the appellee.

SLOAN, J., delivered the opinion of the Court.

This is an appeal from a judgment for the appellee for injuries suffered by her as a result of being bitten by a parrot while in the pet shop of the appellant's department store.

There is but one exception, and that is to the granting of the plaintiff's (appellee's) first or damage prayer, the refusal of the defendant's prayers for an instructed verdict for the defendant, and the overruling of the defendant's special exception to so much of the plaintiff's prayer as presents the question of permanency of injuries. The only questions argued by the appellant were the legal sufficiency of the evidence and the plaintiff's contributory negligence.

The plaintiff testified that she had gone to the department store of the defendant in Baltimore, where she had made some purchases, and, while waiting for change, noticed the

pet shop near by, and thought she "would go there and see if they had a parrot." While talking to a bird which was in a cage, "another bird which was loose came from the back part and of course I started to talk to it and it flew at me and the bird held on to my finger." The bird which did the damage was at large at the time, because its cage was being cleaned, and it was the custom to let it out into the room while this was being done. The plaintiff contends that the offending parrot belong to the class of animals known as *feræ naturæ* and that, as alleged in the first count of the declaration, the "injury was caused solely by the negligence of the defendant in leaving at large a vicious bird without any negligence on the part of the plaintiff." In the second count the allegation of the first count is repeated with the additional charge of the *scienter* of the defendant. The defendant's contention is that parrots do not belong to that class of animals from injury by which negligence may be presumed, and that, before recovery, knowledge of their viciousness must be proved against the owner, and there being no evidence of such knowledge in this case, there should have been an instructed verdict for the defendant.

Both sides cite the dog case of *Twigg v. Ryland*, 62 Md. 380, as authority for their respective contentions, and they can well do so, as Judge Alvey, in the opinion, states the law applicable to both classes of animals, but holds that notice of the dog's propensity should have been brought home to the owner. The law of such cases as stated in the opinion (page 385 of 62 Md.), and as followed by this court since that time, is as follows:

"In regard to the law of the case, it is well settled, that if any person keeps an animal *mansuetæ naturæ*, of a ferocious or vicious disposition, accustomed to bite or attack mankind, knowing that it is possessed of such disposition or vicious propensity, he is bound to restrain such animal at his peril; and if he allows it to escape or go at large, he is liable for all the injury it may inflict by attacking persons in consequence of such ferocious propensity. As declared by the

Queen's Bench, in *May v. Burdett,* 9 Q. B. 101, 'Whoever keeps an animal accustomed to attack and bite mankind, with knowledge that it is so accustomed, is, *prima facie,* liable in an action on the case, at the suit of any person attacked, and injured by the animal, without any averment of negligence or default in the securing or taking care of it. The gist of the action is the keeping the animal after knowledge of its mischievous propensities.' The owner or keeper of the dog or other domestic animal must be shown to have had knowledge of its disposition to commit such injury, and the burden of proving this fact is on the plaintiff, though it would be otherwise if the animal was of a nature to be fierce and untamable, such as bears, tigers, etc. *Spring Co. v. Edgar,* 99 U. S. 654 (25 L. Ed. 487)."

See also 2 *Cooley on Torts* (3rd Ed.), 690-708; *Webb's Pollock on Torts,* 613; *Phillips v. Garner,* 106 Miss. 828, 64 So. 735, and note 52 L. R. A. (N. S.) 377; *Vaughan v. Miller Bros.* (W. Va.), 153 S. E. 289, and note 69 A. L. R. 500; *Bachman v. Clark,* 128 Md. 245, 97 A. 440.

The plaintiff assumes that parrots are by nature wild, and that once wild they legally remain so. In 2 *Kent's Commentaries,* 348, 349, it is stated that deer, although *feræ naturæ,* may be reclaimed and domesticated, and that the common law refers the question whether an animal is wild or tame to knowledge of its habits derived from fact and experience. The plaintiff testified that she "has frequently talked to other parrots before and had been around them a great deal." "I thought the bird was tame and I was talking to the one that was loose." "It looked like it was very tame and I could pet it." William Wallie, head animal keeper and taxidermist at Druid Hill Park, Baltimore, who had at one time owned a bird store, testified without objection that he had handled hundreds of parrots in the last thirty-five years; that they kept them in wire cages because they could gnaw through wooden ones. He was not permitted to express an opinion as to their strength or whether it was safe to allow them to be at large; the court ruling that these

were questions for the jury and not proper matter of expert testimony. We have no difficulty in deciding that parrots, even though they may be classed as animals *feræ naturæ*, are such as may become domesticated or tamed, and that they come within the rule laid down by Chancellor Kent that our knowledge of them is such as may be derived from fact and experience.

This conclusion, then, reduces the question to the negligence *vel non* of the defendant (appellant). 2 *Cooley on Torts* (3rd Ed.), 706-709; 3 *Corp. Jur.* 88. When the plaintiff sustained the injury complained of, she was a customer in the store of the defendant, though not of the pet shop. No question, however, is raised by the defendant of her right to be where she was. The duty of the proprietor under such circumstances, as stated in *Cooley on Torts,* 718 (3rd Ed. 1258), is: "If one expressly or by implication, invites others to come upon his premises, whether for business or for any other purpose, it is his duty to be reasonably sure that he is not inviting them into danger, and to that end he must exercise ordinary care and prudence to render the premises reasonably safe for the visit." *Kann v. Meyer,* 88 Md. 541, 549, 41 A. 1065; *Isaac Benesch & Sons v. Ferkler,* 153 Md. 680, 683, 139 A. 557; *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 454, 146 A. 282; *Grzboski v. Bernheimer-Leader Stores,* 156 Md. 146, 143 A. 706. It is necessary to recovery, however, that negligence be shown in the owner or proprietor.

The question here, then, is whether the defendant was guilty of any negligence resulting in the plaintiff's injury. The parrot's viciousness is evidenced by its biting the plaintiff, but this is not sufficient for a recovery, unless its propensity to bite or attack was known to the defendant, or there were circumstances from which it might have been inferred that it did, or that it was unsafe to allow it to be at large. The plaintiff testified that she thought it was tame, and she might have so inferred from the fact that it was not in a cage. The only evidence tending to show that it was vicious

came from the defendant's witnesses. Harry F. Crouch, on cross-examination, was asked, "Had any parrot at all ever molested any one in that store?" and answered, "The only person I know was the man that had charge of the pet shop in taking the parrots out of the cage when they were shipped from Texas sometimes putting his hand down, a strange parrot * *· *· might nip his finger." He then stated that this parrot was shipped from Texas. This evidence is too far fetched to prove the *scienter* of the defendant. Adopting the view that the offending parrot was a domesticated or tamed bird, it is necessary for the plaintiff to show that it was possessed of a vicious propensity, and that the defendant knew of it or had reason for believing that it was not safe to let it run or fly at large in the store or shop. Mr. Crouch on direct examination testified: "I was in the pet shop when this parrot bit Mrs. Drury. She was looking around the shop. The man that had charge of the pet shop, the floor manager, and myself happened to be there at the time, and there was one bird in the cage and another on top of the cage, and she started toward the cage and she was warned by myself, also by the man in charge of the pet shop, whatever she did not to go near the bird on top of the cage. The only reason he was there was due to the fact the cage he was in was being cleaned. The man in charge of the pet shop and myself told Mrs. Drury, whatever she did, not to touch the bird, and she walked over to it." He said he knew "nothing whatever" about the bird. "The only reason Mrs. Drury was told to keep away was due to the fact you could never tell what would happen and we did that as a precaution, whenever we let the bird out, to tell people to keep away from the birds."

This evidence so closely resembles the facts in *Goode v. Martin,* 57 Md. 606, as to bring this case within the decision in that case. There it is stated in the opinion (page 611 of 57 Md.) that "the fact that the appellee kept his dogs tied during the day and let them loose at night, furnishes proof that he knew it would endanger his neighbors to permit them

to be unfastened. His statement that the dogs had not been chained at an earlier hour, on the day the boy was bitten, because he, the appellee, had remained in bed later that day than usual, is also proof tending to show that he knew that it was unsafe to permit them to be unchained at a time when it was likely that persons would be visiting his house; and he also knew that this very boy was in the habit of coming to this house about that time of the day for the purpose of obtaining milk. This evidence ought to have been left to the jury as tending to prove the temper and vicious disposition of the dogs, and the knowledge of the appellee thereof."

In the instant case the evidence of the defendant is that they kept the parrots caged except when their cages were being cleaned, and that then they "told people to keep away from the birds'; Mr. Crouch concluded his cross-examination by saying, "I am sure I warned the lady not to go near the parrot." If they felt this way about it, the parrots should not have been allowed within reach of the customers. Nothing but the fear of consequences such as we have here could have inspired those having charge of the parrots to warn customers to stay away from them. As held in *Goode v. Martin, supra,* we consider this evidence properly left to the jury "as tending to prove the temper and vicious disposition" of the parrot, and the trial court should have refused, as it did, the A prayer of the defendant.

The defendant's B prayer was for an instructed verdict on the ground that the plaintiff's negligence directly contributed to the accident. There is considerable inconsistency in the contentions of both parties in this respect. If, as the plaintiff contends, the parrot was an animal *feræ naturæ,* then it was negligence for her to attempt to strike up an acquaintance with a bird which she knew to be naturally vicious, untamed, and untamable. On the other hand, the defendant is not consistent in contending that the parrot was a domestic or tamed animal, and that at the same time it was negligence for the plaintiff to come within reach of it;

that is, come within harm's way of a bird which the defendant says was harmless.

The plaintiff's second count, however, charged the defendant with knowledge, and the evidence of both parties is not at variance with the allegations of that count. The prayer does not raise the question of a variance between the evidence and the declaration or either of its counts, so that the decision on the defendant's B prayer must rest upon the facts as offered in evidence. Code, art. 5, sec. 11. The plaintiff went into the pet shop of the defendant, where she had no reason to assume she would be in danger of injury, and where she had every reason to suppose it would be a safe place for her to go. *Dickey v. Hochschild, Kohn & Co.,* 157 Md. 448, 146 A. 282, and cases therein and heretofore cited. There she encountered the parrot. The defendant's witness testified that she was warned not to go near it. She testified that she was not so warned, so that it became a question of fact as to which statement the jury would accept. The matter of the plaintiff's contributory negligence being a disputed fact, of which there was evidence both ways, the court properly rejected the defendant's prayer.

The special exception to so much of the plaintiff's prayer as presented to the jury the matter of the permanency of the plaintiff's injury not having been argued or mentioned in the defendant's brief, we assume that it has been abandoned.

Finding no error in the court's rulings on the prayers, the judgment will be affirmed.

*Judgment affirmed, with costs.*