HAMILTON, ET UX. *v.* SMITH, ETC., ET AL.

[No. 324, September Term, 1965.]

*Decided May 27, 1966.*

The cause was argued before PRESCOTT, C. J., and MARBURY, BARNES and McWILLIAMS, JJ., and EVANS, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Edward D. Storm* for appellants.

*Leroy W. Preston,* with whom were *O'Connor & Preston* and *Edwin F. Nikirk* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

Donald K. Smith (Donald) infant, by his parents and next friends, Floyd S. and Mary M. Smith, instituted suit to recover for near fatal injuries suffered as the result of an attack made upon him by three dogs alleged to be owned or harbored by the defendants Gilmore O. Hamilton and his wife, Rosaline Hamilton. In a separate count Donald's parents sued to recover for medical expenses and loss of services occasioned by the same incident. The suit was filed in Frederick County but was removed to Baltimore County for trial, where it was heard by Judge Walter Mitchell Jenifer, sitting without a jury, in the Circuit Court. At the conclusion of a three day trial, Judge

Jenifer concluded that: (1) the dogs which perpetrated this attack upon the infant plaintiff were owned or harbored by the defendants, (2) the defendants had knowledge of the vicious propensities of the animals, and (3) there had been no contributory negligence on the part of the plaintiffs. Damages were found to be $1,531.28 in favor of the father for medical expenses, no damages for loss of services, and $30,000 in favor of the infant plaintiff. From the judgment entered upon the court's verdict the defendants appealed.

On the morning of November 5, 1963, nine year old Donald was asked by his mother to go to a restaurant owned and operated by the Hamiltons (defendants-appellants) to buy a carton of cokes for her sick younger son. The designated restaurant was on the same tract of land approximately one-quarter of a mile from the Smiths' house, which they rented from the Hamiltons. Mindful that he was to catch a school bus at 8:30 a.m., Donald left for the restaurant at eight o'clock, riding his brother's bike. At some point along the private lane which connects the tenant house to the restaurant and Maryland Route 66, he encountered a dog which chased him for a short distance. Donald was able to get away from the dog and he testified at the trial that he was only able to give it a hurried glance, but he thought it was the defendants' dog Bozo. Arriving at the restaurant, Donald told the only person in the establishment, a customer named Milton Cook, that he had been chased by a dog. Cook, after offering to call "the dogs" so that the boy might safely return to his home, advised the lad to be careful because "those dogs" had bitten someone the previous week. After waiting on Donald, Cook then went outside the restaurant and whistled for the dogs, and "two dogs" responded. Cook was later to testify that he watched Donald until he rounded the first clump of bushes, then returned to the restaurant, and before entering the restaurant he noticed that the "two dogs" were at the rear of the Hamilton house, which is a few feet from the restaurant. Mrs. Hamilton testified that she arrived at the restaurant while the customer, Mr. Cook, was still standing outside, and Donald was not in sight, but her two dogs, Bozo and another which answered to the name of either "Sputnik" or "Fuzzy" (known hereinafter as Fuzzy), were seen by her behind the house at the garbage cans.

Donald testified that when he was on his way home he was approached by Bozo who jumped on his bike and knocked it over. Bozo then dragged him to the roadside and proceeded to bite him repeatedly. Bozo was then joined by two other dogs, which the victim testified also bit him. Donald positively identified these two other dogs as the Hamiltons' dog Fuzzy and another which had no proper name, but was in the testimony called the "bitch" or "gyp dog" (hereinafter referred to as the gyp).

Donald was due back at 8:15 and when he did not return at that time, his older brother, Ronnie, aged fourteen, looked out the kitchen window toward the crest of a hill where he saw the wagging tail of a large dog. He called this to his mother's attention, she guessed what had happened, and both of them rushed to the scene. They testified that upon arrival at the crest of the hill they observed the defendants' dog Bozo biting the infant plaintff's neck and further observed the presence of the gyp and Fuzzy close by the victim's body. Ronnie further observed the gyp and Fuzzy retreat into a woods near the Hamiltons' restaurant. However, Bozo brazenly continued his attack until hit by a stone hurled by Ronnie. Both Mrs. Smith and Ronnie testified that they noticed that Bozo was covered with blood.

Of the three dogs allegedly involved in the attack, Bozo, a cross between a St. Bernard and a German Shepherd, estimated to weigh between 125 and 150 pounds, was by far the largest. Used by Mr. Hamilton as a watchdog, Bozo was unchained regularly at about 1:00 a.m. so that he might freely roam the premises. It was Mr. Hamilton's custom to rechain Bozo every morning somewhere between the hours of 8:00 and 9:00 a.m. At the trial the uncontradicted testimony showed that five days before the attack on Donald, Bozo had attacked and bitten a stranded motorist who was walking across the Hamiltons' parking lot at about 7:00 in the morning. This attack was a continued and lengthy one, and Bozo was joined in the skirmish by his compatriot Fuzzy, which jumped on and mauled, although he did not bite, the motorist. The victim of that attack was taken to a hospital by Mr. Hamilton, who was fully informed of the circumstances of the attack. Bozo's ani-

mosity for human beings was also testified to by Floyd S. Smith, who stated that before the attack on his son he had worked for a period of ten months in the Hamiltons' garage close to the place where Bozo was chained, and during that period it was Bozo's habit to lunge and attempt to break his chain whenever humans approached him. Additionally, he stated that he had never seen anyone "go up to" Bozo except the two defendants, and one of their employees, who was always armed with a stick on those occasions. The second dog to be identified as one which attacked Donald Smith, was Fuzzy, a collie type dog, weighing about fifty pounds. Fuzzy was known by his owners, the defendants, to have attacked and bitten Archie Etzler, an employee and frequent visitor to the Hamilton premises, on a date about two months before the attack on Donald. Etzler, testifying as to that incident, stated that Bozo and the gyp were with Fuzzy and that Bozo was also "trying to get me" but that the latter stopped when he hollered at it. The gyp merely ran into the woods and did not attack or threaten to do so.

The gyp was approximately the same size as Fuzzy and, according to the Hamiltons, had lived on their property for some six years. The testimony showed that it was whelped at a place in the woods near the lane leading to the Smith property not far from the Hamiltons' restaurant, and it was frequently seen in the vicinity of the Hamiltons' dwelling, garage and restaurant. It was fed with the Hamiltons' other dogs, and ran with Fuzzy and Bozo regularly. There was no evidence to show that the gyp had ever bitten anyone, but all witnesses agreed that the dog ran wild and that no human could ever get close to it. Mr. Hamilton testified that he did not consider himself the owner of this dog but did admit that he fed it, and on two occasions prior to the attack on Donald had requested the county dog catcher to dispose of the animal.

On this appeal the appellant raises *inter alia* the factual issue of whether the testimony identifying Bozo and Fuzzy as members of the attacking trio was so contradictory and uncertain that it could not be the basis of a legal conclusion. In reviewing this factual question on appeal, Maryland Rule 886 a controls. This rule provides that after an action has been tried by

the lower court without a jury, the judgment will not be set aside on the evidence unless clearly erroneous. *Space Aero v. Darling,* 238 Md. 93, 106, 208 A. 2d 74, *cert. den.* 382 U. S. 845; *Goodwin v. Lumbermens Mut. Cas. Co.,* 199 Md. 121, 85 A. 2d 759.

A reading of the record in this case reveals, without peradventure of doubt, that there was sufficient evidence from which the trial judge could have found that Bozo, Fuzzy and the gyp perpetrated the attack on Donald. The victim, his brother and his mother all lived on the Hamilton property and were acquainted with the dogs which they identified as the attackers, and their testimony was by no means contradicted or in any respect shaken on cross-examination. The foundation for the assertion that this testimony was "contradictory and uncertain" is actually based on the testimony of other witnesses. Specifically, the appellants point to the testimony of Mrs. Hamilton and Mr. Cook which, if believed, placed Bozo and Fuzzy at the back of the Hamilton house soon after Donald had left the restaurant, and at a point of time when Donald was no longer in sight of either of these two witnesses. From this testimony the appellants argue that the two dogs had an "alibi" since they could not have been at "two places at the same time." The short answer to this contention is that while the two places were known (place of attack and place where the dogs were previously seen), the points of time were not shown to be identical. There was no testimony on how far Donald traveled from the point where he was last seen (as he rounded the clump of bushes) to the point where he was attacked, and the trial judge could have properly inferred that the dogs left the place where they were last seen immediately after Mrs. Hamilton and Mr. Cook entered the restaurant, and then proceeded to overtake Donald before he reached his home. But even if the dogs' alibi had been airtight, the trier of the facts was under no duty to believe this testimony especially when it was contradicted by three eyewitnesses who placed the two dogs at the scene of the attack. Another basis for the contention that the identification was "contradicted and uncertain" is the fact that five witnesses who saw Bozo shortly after the attack testified that they observed no blood on him, and since Mrs. Smith and Ronnie both testified that the

dog which attacked Donald was "covered with blood," then Bozo could not have been that dog. In the first place this negative testimony was counter-balanced by the testimony of Mr. Smith and his employer, Mr. Gilbert, who both testified that they *did* observe blood on the dog shortly after the attack, but even if no one else had observed the blood there would still be substantial evidence (the unequivocal testimony of the victim and his mother and brother) to support the lower court's factual conclusion that Bozo did attack Donald. As we have said on many other occasions, if there is substantial evidence to support the lower court's factual conclusion, that finding must be reviewed in the light most favorable to the party who prevails below. See *Space Aero, supra,* and cases cited therein at page 106.

Appellants secondly contend that they did not have the requisite scienter—that degree of notice which would make them legally responsible for the actions of the animals—because they had no notice that Bozo and Fuzzy would be likely to select this particular type of victim. More specifically, they argue that knowledge that the two dogs had shown vicious propensities toward a stranger is not sufficient notice that the animals would be likely to react in the same vicious manner toward one with whom they were more familiar.[1] The appellants cite the case of *Twigg v. Ryland,* 62 Md. 380, 50 A.R. 226, and quote the following language used by our predecessors (at p. 386) to uphold their contention:

> "The notice which will charge the owner or keeper with liability for the vicious conduct of the animal must be notice that it was inclined to do the *particular mischief* that has been done. Hence, notice that a dog is ferociously disposed towards cattle, is no notice that he will attack persons." (Emphasis added.)

---

1. It should be noted that this legal contention is cloaked in ill-fitting factual clothing insofar as the owners' foreknowledge of Fuzzy's vicious propensities were concerned, since the appellants admitted that they knew Fuzzy had bitten Etzler, a person who had fed Fuzzy on prior occasions and a person with whom Fuzzy was well acquainted.

We think that it is manifest that the above quoted language was meant only to recognize the familiar rule (see cases cited in Prosser, *Torts,* § 75, p. 515 (3d ed.) that where the owner has notice that a domestic animal is inclined to attack other animals this is not sufficient notice to the owner that he is likely to attack humans and was not meant to imply that an animal's owner could know that he had exhibited vicious propensities toward one of a certain class of persons and not put the owner on notice that he would be likely to be ferociously inclined toward all mankind. This is made obvious from a portion of the *Twigg* opinion which precedes the excerpt above cited wherein (at p. 385) the English case of *May v. Burdett,* 9 Q. B. 101, was quoted to the following effect:

> " 'Whoever keeps an animal accustomed to attack and bite *mankind,* with knowledge that it is so accustomed, is, *prima facie,* liable in an action on the case, at the suit of *any person* attacked and injured by the animal, without any averment of negligence or default in the securing or taking care of it. The gist of the action is the keeping the animal after knowledge of its mischievous propensities.' " (Emphasis added.)

Therefore, we find the evidence sufficient to support a finding of fact that scienter was present. Both owners had actual knowledge, on a date previous to the one on which Donald was attacked, that their dogs had attacked and injured the stranded motorist. This gave them notice that the dogs were likely to attack mankind in general, and they kept the dogs at the risk of incurring liability for this type of damage done by the animals.

Appellants thirdly contend that they are not liable for the damages done to Donald by the gyp (which they fed and harbored) because they had no notice that she was viciously disposed toward humans. Even assuming, without deciding, that knowledge that the gyp ran wild and that no human could get close to it, did not give the defendants notice of any vicious propensities possessed by the dog, there was evidence to support a holding that the defendants were liable for the damages done by it. The trial judge made as a finding of fact, based

upon the victim's testimony, that Bozo was the instigator of the attack and had singly inflicted the major part of the damage to the youngster. Moreover, it was the huge dog, Bozo, which made the victim available to the other two dogs by knocking over the bicycle which the boy was riding and dragging him to the side of the road, and Bozo's owners were responsible for all damages which proximately flowed from this action. It is well known that dogs tend to hunt their prey in packs, and once Bozo had felled his victim it was entirely a natural consequence that the gyp would join in the attack. Because the gyp's attack was proximately caused by Bozo's actions in making the boy available, Bozo's owners were also liable for the injuries inflicted by the gyp, regardless of their previous knowledge of its vicious propensities.

Appellants next put forth the somewhat ingenious proposition that since the plaintiffs and defendants in this case had equal knowledge of the dogs' (Bozo's and Fuzzy's) vicious propensities, they, as defendants, can not be guilty of negligence, unless the plaintiff-parents were also guilty of contributory negligence. In an action such as the instant one there are three elements which must be proven against a defendant in order to show negligence on his part: (1) owning or harboring of an animal (2) with vicious propensities, (3) with knowledge (scienter) of its vicious propensities. See *May Co. v. Drury*, 160 Md. 143, 147, 153 Atl. 61, and Annot. 66 A.L.R. 2d 916, 922. Evidence of all three of the above elements was shown. Assuming that the plaintiffs did have the same knowledge as had the defendants, their conduct vis a vis the dogs was by no means parallel, since it was the defendants who, after they had learned of the dogs' vicious propensities, also elected, at their peril, to continue to own and harbor the animals. Proof of another's knowledge of the vicious propensities of a domesticated animal, unaccompanied by proof of ownership or possession, is insufficient to show negligence, contributory or primary, under the circumstances. The plaintiff-parents' conduct subsequent to obtaining knowledge of the dogs' vicious propensities certainly does not add up to contributory negligence as a matter of law.

Lastly, the appellants contend that Donald was guilty of contributory negligence because: "the fact that a dog 'chased' him

on his way to the restaurant should have put him on guard against returning by the same route on the same bike without making sure that whatever dog it was that had chased him would not do so again." First, the testimony in this case clearly supports a finding that Donald had neither an alternative route nor an alternative means of transportation to his home. Second, the appellants do not suggest what precautions a reasonably prudent boy of Donald's age and intelligence might have taken for his own safety, and which were not taken by Donald so as to insure against the possibility of being again chased by a dog which the appellants had allowed to freely roam their premises. Third, there was clear evidence that Donald did take certain precautions to avoid the attack and that these measures were all that a reasonably prudent boy of Donald's age and intelligence would have taken under similar circumstances. There was evidence that Donald told Mr. Cook of the attack, that Mr. Cook called the dogs and that they were seen at the back of the Hamilton home, that Mr. Cook watched Donald as he proceeded homeward. Under these circumstances it was clearly not contributory negligence, as a matter of law, for Donald to attempt the return journey home.

*Judgment affirmed, costs to be paid by the appellants.*