489 A.2d 549

**Norman BENTON**

v.

**The AQUARIUM, INC., et al.**

No. 531, Sept. Term, 1984.

Court of Special Appeals of Maryland.

April 3, 1985.

**374**

Alice G. Pinderhughes, Baltimore, (David R. Cohan, and Cohan & Finkelstein, P.A., Baltimore, on brief), for appellant.

Gerard F. Miles, Baltimore, (Richard H. Lerch, and Lerch & Huesman, Baltimore, on brief), for appellees.

Argued before MOYLAN, WEANT and GARRITY, JJ.

GARRITY, Judge.

We are asked to determine whether the trial court properly granted a directed verdict on grounds that a dog bite victim had failed to show that the animal had vicious propensities, and that the victim had assumed the risk of being attacked after having been warned.

The appellant, Norman Benton, a truck driver for a local transit company, was dispatched to the premises of the Aquarium, Inc., a supplier of aquarium products in Baltimore City. Upon arriving at the location, which he had not previously visited, Mr. Benton went inside a waiting room through an exterior door. The waiting room contained two additional doors, one leading into a warehouse area and the other to an office. Posted on the door to the warehouse was a sign with a drawing of a bulldog with its mouth wide open as it sneeringly displayed a grid of sharp, large canines. The sign boldly proclaimed "TRESPASSERS WILL BE EATEN." Posted on the door of the office was another sign with a drawing of a bulldog wearing a guard's hat. The sign advised, "GUARD DOG ON DUTY."

Appellee, Fred S. Cohen, general manager of the company, and the owner of "Jeno," a 100 pound German shepherd, explained that the dog was generally allowed to roam free throughout the warehouse. Whenever a truck driver would come to the facility, however, he would be instructed to wait in the foyer until Jeno and another German shepherd, were put into the office. Mr. Cohen advised that this precautionary routine was necessary because some people were uneasy around dogs or just did not like them. Further, it was possible that the dogs could obstruct the passage of individuals delivering large boxes. Finally, a dog barking at strangers, i.e. drivers, presented at least the possibility of further aggressive action.

Mr. Benton admitted that while in the waiting area, he had observed the signs on each of the doors. Not truly believing the signs, however, he knocked on the warehouse door, heard muffled voices, opened the door, walked inside, and was attacked by the dog. Just before the dog rushed at Mr. Benton, foreman Brad Lieberman, Barbara Spinks, Mr. Cohen and his father, yelled in unison, "Get out! There's a dog in here!" The dog's canines pierced the center of Norman Benton's left hand and caused profuse bleeding and progressive pain.

At the close of the appellant's case, the court granted a motion for directed verdict on behalf of the appellees. The trial judge (Grady, J.) concluded that in order to establish negligence the appellant had to prove that the dog had vicious propensities of which the appellees were aware. The court ruled that the appellant had failed to demonstrate that the dog had vicious propensities. The court further ruled that Mr. Benton had assumed the risk of being bitten when he ignored the two warning signs that were posted on the waiting room doors.

*Directed Verdict*

The appellant contends that the trial judge erroneously granted appellees' motion for directed verdict on the

grounds that the appellant had failed to present any evidence to establish that Jeno had vicious propensities.

In a recent case involving another unfortunate dog bite incident, we had occasion to discuss the standard for determining when a directed verdict should be granted. Writing on our behalf in *Slack v. Villari*, 59 Md.App. 462, 476 A.2d 227 (1984), Judge Weant observed:

> The standard for determining whether a directed verdict should be granted is extremely strict. 'A directed verdict is inappropriate where there is any legally relevant and competent evidence, however slight, from which a rational mind could infer a fact which if found to exist would prevent judgment for the moving party.' *Impala Platinum Ltd. v. Impala Sales (U.S.A.) Inc.*, 283 Md. 296, 328–29, 389 A.2d 887, 905–06 (1978). Nonetheless, there are circumstances in which the directed verdict is appropriate. As we recently stated in *Cavalier Mob. Homes v. Liberty Homes*, 53 Md.App. 379, 454 A.2d 367, *cert. denied*, 295 Md. 736 (1983):
>
>> Whenever the facts, and any rational inferences which may be drawn from them, point so strongly toward the non-existence of an essential element of a party's cause of action or defense that no reasonable man could find for its existence, the appropriate level of non-persuasion has been reached and a directed verdict is proper.
>
> *Id.* 53 Md.App. at 385, 454 A.2d at 372.

The Court of Appeals in *Hamilton v. Smith*, 242 Md. 599, 608, 219 A.2d 783 (1965), wherein evidence established that the owner of three dogs who had savagely attacked a nine-year old boy had actual knowledge of the dogs' vicious propensities, held that:

> In an action such as the instant one, there are three elements which must be proven against a defendant in order to show negligence on his part: (1) owning or harboring of an animal; (2) with vicious propensities, (3) with knowledge (scienter) of its vicious propensities.

The appellant contends that the following facts were sufficient to establish the vicious propensities of Jeno:

1. Evidence that Jeno bit appellant's hand and then forced him down.
2. Evidence of warning signs on the door.
3. Evidence that truck drivers were instructed to wait in the foyer until the dogs were cleared from the warehouse.
4. Evidence that the dog was kept on the premises to discourage strangers from entering the warehouse.
5. Evidence that when drivers came into the vestibule area, Jeno would react to their presence by barking.
6. An acknowledgement by Jeno's owner that depending upon the reaction of a stranger, there was a possibility that the dog could act more aggressively.
7. When Mr. Benton opened the door and walked into the warehouse, four individuals inside, including Mr. Cohen, yelled in unison, "Get out! There's a dog in here!"

Although the German shepherd guard-dog was certainly advertised as being the ultimate scourge upon any trespasser who would dare walk in its path, Mr. Cohen testified that Jeno was a friendly dog. The record showed that:

1. Jeno had been trained since birth and reacted promptly to all of his master's (Mr. Cohen's) commands.
2. Jeno accompanied his master practically everywhere he went, except for certain places such as the theatre or restaurant.
3. Jeno was free to roam throughout the warehouse and office in the midst of the ten employees who worked there.
4. There was no evidence of any prior incidents where the dog had attacked or had bitten a human.

In *Slack v. Villari, supra,* we had occasion to examine collaterally the question of a dog's vicious propensity. In that case, the plaintiffs were taking their evening walk on a public sidewalk in front of the defendant's home. The

defendant's dog came running towards them, while snarling and growling. The plaintiff attempted to avoid the dog, and in doing so, twisted her body causing injury to her back. The dog in question, whose name was Gideon, was a Doberman pinscher. The dog was normally kept in the house or in the backyard which was fenced-in. Evidence established that the dog would bark when the doorbell rang and would bark at other dogs. In fact, Gideon had chased other dogs on at least three occasions.

We determined that based upon the record before us, there was no indication that Gideon had attacked people in the past, and that the owners of the dog could not be charged with knowledge that the dog would have acted in the manner it had.

■ As in *Slack*, the trial judge was again faced with what appears to have been an isolated, single occurrence. However, what makes this case crucially different from *Slack*, is that there was sufficient evidence to allow the jury to infer that Jeno, the German shepherd guard-dog, did exactly what he was trained to do when Mr. Benton, who was a stranger to the dog, walked into the warehouse. As previously related, the individuals inside the warehouse, including the dog's master, yelled in unison to Mr. Benton to, "Get out! There's a dog in here!" We believe the jury could have reasonably inferred that Mr. Cohen knew or should have known that his animal, as advertised, would staunchly defend its turf against a stranger and attack the intruder.

Although we hold that the question as to the dog's vicious propensity should have been submitted to the jury, our determination on this issue will provide but fleeting solace to the appellant.

### Assumption of Risk

The appellant contends that the trial judge erred in granting the appellees' motion for directed verdict on the grounds that because of the obvious warning signs, a person of Mr. Benton's intelligence either knew or should

have known that he was exposing himself to a risk of injury if he entered the warehouse.

■ In considering a motion for directed verdict, the non-moving party is entitled to have the court review all credible evidence on the issue and all inferences fairly deducible therefrom in a light most favorable to him. *Vann v. Willie,* 284 Md. 182, 395 A.2d 492 (1978); *Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 389 A.2d 887 (1978). Therefore, although there is indeed a question as to whether Mr. Benton should be afforded the status of a business invitee within the storage area of the warehouse, we shall treat him as such. We shall also, for the limited purpose of this discussion, assume that the appellant had established a prima facie case of negligence. Nevertheless, a determination that Mr. Benton abandoned his right to complain by assuming the risk of injury would negate the issue of the appellees' negligence.

As observed by Judge Liss writing on behalf of this Court in *Pfaff v. Yacht Basin Co.,* 58 Md.App. 348, 355, 473 A.2d 479;

> The test to be applied in determining whether an invitee realizes the risk involved in being exposed to dangerous conditions is 'where it is clear that any person of normal intelligence in his position must have understood the danger, the issue must be decided by the Court.' *Gibson v. Beaver,* 245 Md. 418, 421, 226 A.2d 273 (1967). Where an invitee knows of a dangerous condition and appreciates the risks involved, yet, nevertheless, voluntarily chooses to negotiate them he will be barred from recovering for the risk he chose to assume. *Lloyd v. Bowles,* 260 Md. 568, 273 A.2d 193 (1971).

In *Pfaff v. Yacht Basin Co., supra,* we examined a situation wherein the trial judge had granted summary judgment on the theory that Pfaff, a parking lot business invitee, had, by his conduct after parking a pickup truck, assumed the risk of falling over the edge of the upper tier of the two-tier lot. We affirmed in the aftermath of the appellant's own admission that he fell simply because he

forgot the tailgate was hanging over the edge of the tier while he was retrieving a heavy suitcase from the truck bed and backing out on his hands and knees.

In *Gibson v. Beaver, supra,* wherein Gibson had suffered a heart attack while helping an oil man pull a delivery hose from the truck to his house, we affirmed a directed verdict on the ground that Gibson freely chose to assist the delivery man.

The thrust of appellant's argument in support of jury referral in the case *sub judice* is as follows:

There was a question of fact as to whether the sign "TRESPASSERS WILL BE EATEN" was so comical that the appellant's entrance into the warehouse was not an assumption of the risk. Furthermore, the appellant knocked on the door and called in advance to indicate to the appellees that he was coming. Appellant heard no dog barking and there was no evidence that the dog was present. Considering the hour of the day and the fact that the appellant was an invitee to the premises of the appellee's business, it cannot be seriously considered that the appellant assumed the risk.

While there has not been any Maryland case directly addressing warning signs as to animals, several cases from other states have found that persons bitten by a dog assumed the risk of injury when they disregarded such warnings. In *Duplechain v. Thibodeaux,* 359 So.2d 1058 (La.App.1978) a clearly visible sign was posted as saying "BEWARE OF THE DOG." In addition, the injured boy received a verbal warning to stay away from the animal. Nevertheless, the young man chose to enter the area in which the dog was located and was bitten. The Court found that the injury was the result of the plaintiff's failure to heed the warnings and denied recovery.

In *Swerdfeger v. Krueger,* 145 Colo. 180, 358 P.2d 479 (1960) the Court reversed a verdict in favor of an individual who was bitten by the defendant's dog. The boy who was injured had received warnings from his companions not to approach the dog. Upon evidence that the plaintiff had

been bitten after ignoring the warnings of injury, the Court held that his claim was barred upon his assumption of the risk of being injured.

■ Objectively evaluating Mr. Benton's conduct, we believe that it was unreasonable for him to conclude that the posted warnings were not to be taken seriously. In fact, he admitted that the sign that read, "GUARD DOG ON DUTY," which was posted on the office door, was not intended as a joke. Indeed, Mr. Benton testified, "That would be kind of dumb of me if I saw a sign that said, 'GUARD DOG ON DUTY,' not to think it was put there for a reason." Had Mr. Benton equally heeded the sign on the warehouse door, which he must as a normal intelligent person be held to have understood and appreciated, there would not have been a risk of injury.

We conclude that, under the facts and circumstances of this case, Mr. Benton voluntarily left his place of safety and crossed the threshold of danger that he should have known and appreciated. We hold that the trial court properly granted appellees' motion for a directed verdict on the theory that Mr. Benton had assumed the risk of being injured.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.