■ CHARLOTTE HAYDEN, Appellant, v FRANK SIENI et al., Respondents. [601 NYS2d 327] —In an action to recover damages for personal injuries sustained as a result of dog bites, the plaintiff appeals from a judgment of the Supreme Court, Nassau County (Roberto, J.), entered April 23, 1990, which, upon a jury verdict, is in favor of the defendants and against her.

Ordered that the judgment is affirmed, without costs or disbursements.

This action arose out of an incident on or about June 11, 1984, when the plaintiff received multiple bite wounds from the defendants' German shepherd. A jury trial was conducted and the jury specifically found that the defendants' dog did not have vicious propensities.

On appeal, the plaintiff contends that she was denied a fair trial based on the trial court's refusal to conduct a unified trial on liability and damages. Generally, questions of liability and damages in a personal injuries action represent distinct and severable issues which should be tried and determined separately *(see, DeGregorio v Lutheran Med. Ctr.,* 142 AD2d 543; *Addesso v Belting Assocs.,* 128 AD2d 489). However, separate trials should not be held where the nature, extent, and gravity of the injuries has an important bearing on the question of liability insofar as it is relevant to the jury's assessment of the dog's propensities *(see, Lynch v Nacewicz,* 126 AD2d 708). While cognizant of our holding in *Lynch v*

*Nacewicz (supra)* we find that based on the specific circumstances in this case, any error by the trial court was harmless. Here, the plaintiff was given the option to have a unified trial before the trial began; however, it was not until after a jury was selected, opening statements were made, and testimony was elicited, that the plaintiff chose to withdraw the original application and request a unified trial. Moreover, the court permitted the plaintiff to introduce photographs in order to show the nature, extent, and gravity of the injuries sustained by her. Thus, any prejudice to her was nullified by the admission of the photographs.

The opinion of the defendants' expert that the defendants' dog was not vicious was based upon facts personally known to him as a result of his evaluation of the dog, and, thus, his testimony was both relevant and admissible *(see, Hambsch v New York City Tr. Auth.,* 63 NY2d 723; *Espinosa v A & S Welding & Boiler Repair,* 120 AD2d 435).

Contrary to the contentions of our dissenting colleagues, the facts with respect to what occurred during the encounter were in dispute. The defendants produced sufficient evidence to permit the jury to conclude that the dog was not vicious, and, therefore, we defer to the jury's assessment of the witnesses' credibility and decline to grant a new trial *(see, Theodosiou v CLD Transp. Co.,* 147 AD2d 692; *DeVaul v Carvigo Inc.,* 138 AD2d 669).

The plaintiff's remaining contentions regarding the court's jury charge are either unpreserved for appellate review or meritless. Thompson, J. P., Bracken and Lawrence, JJ., concur.

Miller, J., dissents and votes to reverse the judgment appealed from, as a matter of discretion, and to grant the plaintiff a new trial, with the following memorandum, with which Rosenblatt, J., concurs. On June 11, 1984, the plaintiff, a licensed practical nurse, was scheduled to provide overnight in-home care for a patient living in Old Brookville. At approximately 11:20 P.M., while travelling through an unfamiliar neighborhood, the plaintiff pulled her car into the driveway of the home she believed to be that of her patient. She exited her car dressed in her two-piece white nurse's uniform, and walked to the front door, where she was met by the defendant Antoinette Sieni.

From this point on, the plaintiff's and the defendants' versions of the incident are generally in accord and only conflict as to the immediate initial encounter between the

plaintiff and the dog. The general circumstances of the plaintiff's arrival and conversation with Mrs. Sieni, and the multiple bites eventually suffered, are not controverted.

The plaintiff explained that she was the private duty nurse for her patient, whereupon Mrs. Sieni informed the plaintiff that she was at the wrong house. Mrs. Sieni exited the house to give the plaintiff directions to her patient's home. After receiving those directions, the plaintiff turned to return to her car. As she did so, the defendants' German shepherd ran around from the side of the house, knocked the plaintiff to the ground, and began biting her. The plaintiff managed to regain her feet, but was knocked back down and bitten again. She again broke free and ran into the house with the dog chasing behind. She entered the house, but before the screen door could close, the dog rushed in behind her and began biting the plaintiff once again. Two men, including the defendant Frank Sieni, ultimately brought the dog under control. By this time the plaintiff's uniform was "all bloody". The plaintiff sustained bite wounds to her arms, legs, and breast.

However, according to the defendants, the plaintiff's nervousness, fear of dogs, and attempt to fend him off by hitting him with her handbag, provoked the attack. Mrs. Sieni related the dog's gallop toward the two women as they spoke outside, and her effort to calm him down as the plaintiff cried out "Oh no, not a dog", and lifted her handbag to strike him. Mrs. Sieni was uncertain as to whether the plaintiff was first bitten outside the house or inside, or whether the dog first bit the plaintiff's handbag or her arm, but she reported that she called for her husband's help as the dog followed the plaintiff into the house where the attack continued until the dog was finally pulled off of the plaintiff.

Notwithstanding the evidence adduced by the plaintiff as to the brutal nature of the attack, the jury returned a defendants' verdict, finding that she had failed to prove that the dog exhibited vicious propensities.

I agree with the plaintiff's contention that she should be granted a new trial because the court's jury charge on theories of negligence was wholly erroneous and highly prejudicial. It is now established beyond cavil that "[t]he rule governing one who keeps an animal with knowledge of its vicious propensities is one of strict * * * or * * * absolute liability rather than negligence" (Arbergast v Board of Educ., 65 NY2d 161, 164; Austin v Bascaran, 185 AD2d 474; Silva v Micelli, 178 AD2d 521; Morales v Quinones, 72 AD2d 519). As such, it is settled that a jury charge explaining general principles of

negligence should not be given in a dog bite case to be decided on a strict liability theory *(see, Lynch v Nacewicz,* 126 AD2d 708; *Stoop v Kurtz,* 121 AD2d 529). In the instant case, although the court did provide a strict liability charge, it did so only after providing an unwarranted negligence charge.

A comparison of the record in this case with the record in *Lynch v Nacewicz (supra)* reveals that the court's negligence charge in this case was even more egregious than that condemned in *Lynch.* In *Lynch* the court merely defined general principles of negligence without expressly instructing the jury that the plaintiff's recovery turned on a finding of negligence. In the instant case, however, the court expressly instructed the jury:

"Defendants admit that [the dog] bit [the plaintiff], but claim she provoked the attack, and that her action in knocking Mr. Sieni down explains the dog's protective behavior in biting [the plaintiff].

"In order to prevail on her claim against the defendants, the plaintiff must prove, by a fair preponderance of the believable evidence, one, that the *defendants were negligent.* And two, that said *negligence was a proximate cause* of the accident. In other words, *you must determine whether the plaintiff has carried her burden of proving that the defendants acted in a negligent manner, which proximately caused the incident"* (emphasis added).

This charge was clearly erroneous and could very well have influenced the jury in its overall assessment of the plaintiff's proof on the issue of whether she established that the dog exhibited vicious propensities. As we observed in *Lynch v Nacewicz (supra,* at 709), "The trial court's charge to the jury on liability, insofar as it was prefaced by an instruction as to basic principles of negligence, was * * * erroneous. A new trial is required to permit the jury to decide the issues ' "without danger of confusion in their minds as to the law" ' *(Silber v Seidler,* 19 Misc 2d 516, 517, quoting from *Johnson v Blaney,* 198 NY 312, 317; *see, Stoop v Kurtz,* 121 AD2d 529 *[, supra]; Russell v Lepre* [99 AD2d 489])."

In this case, there was evidence from which the jury could have concluded that the defendants' dog exhibited vicious propensities of which the defendants were aware. Clearly, the three separate biting incidents that comprised this series of attacks gives rise to an inference of this dog's viciousness *(see, Perrotta v Picciano,* 186 App Div 781; *Thirlwall v Galanter,* 66 Misc 2d 88). Moreover, a "Beware of Dog" sign was displayed

on the defendants' property. While there is an issue of the plaintiff's comparative fault raised as to whether she should have seen this sign *(see, Pisciotta v Parisi,* 155 AD2d 422), so, too, could the jury infer that the sign was intended to warn both trespassers or invited guests to exercise caution due to the presence of an animal capable of inflicting physical injury. In short, the plaintiff presented sufficient evidence from which the jury could have found in her favor.

The confusing effect of the erroneous charge was particularly prejudicial to the plaintiff in this case where only subtle factual distinctions bore upon the jury's ultimate determination of whether this dog's vicious propensities prompted the attack. Moreover, neither the plaintiff's nor the defendants' experts were likely to have provided persuasive guidance. The plaintiff's expert, although well qualified as an "animal behaviorist", testified only as to hypothetical situations and never actually examined the defendants' dog. The defendants' expert, who was not trained in animal behavior but rather was a dog trainer, viewed the animal five years after the incident when the dog was greater than 10 years old (equivalent to a 75-year-old human), in the home environment with the family present. Therefore, under the circumstances of this case, notwithstanding counsel's failure to object to the charge, the interests of justice dictate that the plaintiff should have a new trial on the issues of liability and damages without the confusion caused by unwarranted instructions on the inapposite theory of negligence.