705 A.2d 334

Vanderly MOURA, Individually, etc., et al.

v.

Warren RANDALL.

No. 240, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Feb. 6, 1998.

Ronald A. Karp (Jack A. Gold and Karp, Frosh, Lapidus & Wigodsky, P.A., on the brief), Bethesda, for appellants.

Barbara A. Graham, Rockville (Martha L. Handman, Gaithersburg, on the brief), for appellee.

Before DAVIS, HOLLANDER and KENNEY, JJ.

HOLLANDER, Judge.

This case arises out of a tragic incident that occurred on August 15, 1994, when "Diesel," a Rottweiler owned by Warren Randall, appellee, savagely attacked four-year old Alex Moura ("Alex"), the son of Vanderly and Irene Moura, appellants. On December 22, 1995, appellants, individually and as parents and next friends of Alex, filed a multi-count complaint[1] in the Circuit Court for Montgomery County against appellee, seeking compensation for the injuries Alex sustained

---

1. Counts I and II pertain to the child's injuries. Counts III and IV concern the mother's injuries. In Count V, appellants sought "Recovery of Medical and Other Expenses on Behalf of Parents." In their brief, appellants challenged only the court's disposition of Counts I and II. In their briefs, neither appellants nor appellee addressed the remaining counts. Therefore, we shall not consider or address the court's ruling as to Counts III through V.

when he was mauled about the head by appellee's dog. After the court entered summary judgment in favor of appellee on all claims, appellants noted their appeal. They present the following issues for our review:

I. Did the trial court err in granting appellee's motion for summary judgment when it found no violation of the Montgomery County "Animal Control" ordinance?

II. Did the trial court err in granting appellee's motion for summary judgment when it found there was no genuine issue as to material fact concerning the reasonableness of appellee's control of his dog?

III. Did the trial court err in granting appellee's motion for summary judgment when it found no genuine issues of material fact existed as to whether appellee should have known of his dog's vicious propensities?

For the reasons discussed below, we answer these questions in the affirmative. Accordingly, we shall reverse.

## Factual Summary

At about 10 a.m. on the morning of August 15, 1994, appellee intended to take his two-year old Rottweiler for a walk, without using a leash. While appellee was still on the common grounds of the townhouse development where he lived, the dog, which was standing approximately fifteen feet from appellee, suddenly bolted after another dog. Appellee unsuccessfully pursued Diesel on foot for about three blocks. When he was unable to locate the dog, appellee continued his search by car. Approximately ten minutes later, appellee discovered Diesel in a parking lot of an apartment complex. Police officers at the scene informed appellee that his dog had just attacked Alex.

Appellants subsequently filed suit, alleging appellee was liable based on negligence and strict liability. Thereafter, appellee moved for summary judgment, arguing that appellants failed to present a genuine dispute as to any material fact concerning: (1) appellee's violation of the Montgomery County "Animal Control" ordinance; (2) appellee's failure to

exercise reasonable care in his control of Diesel; or (3) that appellee knew or should have known of Diesel's tendency to bolt or vicious propensities. In appellee's affidavit in support of his motion, he stated that Diesel had attended obedience classes every Saturday and Sunday from December 1992 through March 1993 and, from April 1993 through October 1993, the dog attended classes as appellee's work schedule permitted. Appellee averred that Diesel was always friendly and, prior to the attack, Diesel had never been aggressive, Diesel had never bitten anyone, and Diesel had never run after another dog.

In their opposition to the motion, appellants argued, *inter alia*, that appellee had violated § 5–26 of the Montgomery County Code (1994, Supp. No. 22) (hereinafter "MCC"), and that the violation constituted *prima facie* evidence of negligence. They also asserted that there were material factual disputes concerning appellee's knowledge of Diesel's propensity to bolt or cause harm, the dog's failure to obey appellee's commands, and whether appellee exercised reasonable care in controlling Diesel.

In support of their position, appellants attached a copy of appellee's testimony, given under oath before the Animal Matters Hearing Board of Montgomery County (the "Board"). There, appellee conceded that, on one occasion when Diesel was unleashed, he had chased a cat into the wooded area behind appellee's residence. Appellants posited that this incident charged appellee with the knowledge that Diesel might not always obey commands and that Diesel might run away if unleashed. Appellants also submitted a copy of the testimony of Mark Lipsitt, a dog trainer and kennel owner with twenty-five years of experience working with animals, who appeared before the Board on December 5, 1994. Lipsitt's testimony concerned a report he prepared with respect to his examination of Diesel soon after the attack. He testified that when he examined Diesel, "[t]he dog was straining at the leash. The dog was jumping up and down in an effort to get to me. He was barking. He was growling. He was snarling. He was baring his teeth, and he was snapping." Consequently, Lipsitt

concluded that Diesel had "previous experience with agitation." Appellants did not submit Lipsitt's actual report.

Appellants also submitted a copy of the testimony of Robert Maida, a dog trainer specializing in animal behavior problems and aggression, who also testified before the Board on December 5, 1994. Maida opined that, based on Lipsitt's evaluation of Diesel, he believed Diesel was dangerous.

Further, appellants attached their own answers to appellee's interrogatories, in which they proffered the opinions of Maida and Carlos Mejias as expert witnesses, stating that Diesel should have been leashed because he was dangerous. Appellants failed to include affidavits from these witnesses, however.[2]

Thereafter, the circuit court granted summary judgment in favor of appellee, stating:

> In this instance I have nothing to contradict the affidavit statements of the owner that he never experienced this particular animal to exhibit vicious propensities; that he had only had the dog bolt once, and that was when the dog was only a month or two or so into obedience training. It was some lengthy period before this tragic incident.

> . . . .

> That he would walk this dog several times a day substantially without a leash, relying on the benefit of the training program the dog had been through. That there has been no previous example of the dog bolting.

> So, there is not any real evidence here that would show— the Court believes an issue—a dispute that should be presented to the jury with regard to the owner's subjective knowledge of any propensities for this particular animal.

2. In their brief, appellants state that they offered to supplement their memorandum with affidavits if the trial court deemed it necessary in deciding the motion.

. . . .

Plaintiff goes on to say that there is a violation of the Montgomery County—we called it the leash law at first—in that this animal was not on a leash and permitted to be at large.

The Court finds that given the affidavit of the defendant, that this dog had undergone an extensive obedience training program; that the dog consistent with that program had been unleashed on several occasions a day for several years, and had never exhibited a bolt. That he was neither permitted, nor was he at large, due to the conduct of the owner.

The owner believed—had the right to believe, based on experience, that the dog was under control, and that he need not be leashed if he was in fact under control.

And that is what the Court finds occurred here. The dog was under control, not permitted to run at large, and escaped.

To me it was really no different in concept than if a dog was on a leash and broke the leash and ran away. He was not permitted to be at large; it was an escape.

. . . .

It gives the Court no pleasure whatsoever to grant the summary judgment. It is a very tragic occurrence.

On the other hand, I am compelled to rule according to the law as I understand it to be in Maryland, so I have no choice.

### Standard of Review

Maryland Rule 2–501 governs summary judgment. It provides that in order to grant a motion for summary judgment, the trial court must determine that no genuine dispute exists as to any material fact, and that one party is entitled to judgment as matter of law. *Bagwell v. Peninsula Regional Medical Ctr.,* 106 Md.App. 470, 488, 665 A.2d 297 (1995), *cert.*

*denied,* 341 Md. 172, 669 A.2d 1360 (1996); *see also Southland Corp. v. Griffith,* 332 Md. 704, 712, 633 A.2d 84 (1993); *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737–38, 625 A.2d 1005 (1993); *Bits "N" Bytes Computer Supplies, Inc. v. Chesapeake & Potomac Tel. Co.,* 97 Md.App. 557, 580–81, 631 A.2d 485 (1993), *cert. denied,* 333 Md. 385, 635 A.2d 425 (1994); *Seaboard Sur. Co. v. Richard F. Kline, Inc.,* 91 Md.App. 236, 242–45, 603 A.2d 1357 (1992). In reviewing the motion, the court must consider the facts in the light most favorable to the non-moving party, *Dobbins v. Washington Suburban Sanitary Comm'n,* 338 Md. 341, 345, 658 A.2d 675 (1995); *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985), construing all inferences reasonably drawn from those facts in the non-movant's favor. *Tennant v. Shoppers Food Warehouse,* 115 Md.App. 381, 387, 693 A.2d 370 (1997); *Bagwell,* 106 Md.App. at 488, 665 A.2d 297.

In order to defeat a motion for summary judgment, the non-moving party must establish that the parties have a genuine dispute as to a material fact. A material fact is one that will somehow affect the outcome of the case. *King,* 303 Md. at 111, 492 A.2d 608. If a dispute exists as to a fact that is not material to the controversy, the entry of summary judgment is not foreclosed. *Scroggins v. Dahne,* 335 Md. 688, 691, 645 A.2d 1160 (1994). Moreover, mere formal denials or general allegations that fail to show facts in detail and with precision are not sufficient to prevent the entry of summary judgment. *Shaffer v. Lohr,* 264 Md. 397, 404, 287 A.2d 42 (1972); *Frush v. Brooks,* 204 Md. 315, 320–21, 104 A.2d 624 (1954).

In the absence of a genuine dispute as to material fact, we must determine whether the trial court reached the correct legal result. *Beatty,* 330 Md. at 737, 625 A.2d 1005; *see also Heat & Power Corp. v. Air Prods. & Chems., Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990); *King,* 303 Md. at 111, 492 A.2d 608. Appellate courts generally review the grant of summary judgment "only on the grounds relied upon by the trial court." *Blades v. Woods,* 338 Md. 475, 478, 659 A.2d 872 (1995); *see Hoffman v. United Iron and Metal Co., Inc.,* 108 Md.App. 117, 132–33, 671 A.2d 55 (1996).

## Discussion

### I.

Preliminarily, we address appellee's contention that the testimony of Lipsitt and Maida before the Board, and the proffer of expert testimony from Maida and Mejias, could not be considered by the trial court in resolving the summary judgment motion, because such testimony would not be admissible at trial.[3] Maryland Rule 2–501(b) provides:

The response to a motion for summary judgment shall identify with particularity the material facts that are disputed. When a motion for summary judgment is supported by an affidavit or other statement under oath, an opposing party who desires to controvert any fact contained in it may not rest solely upon allegations contained in the pleadings, but shall support the response by an affidavit *or other written statement under oath.*

(Emphasis added). Rule 2–501(c) further provides: "An affidavit supporting or opposing a motion for summary judgment *shall be made upon personal knowledge,* shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit." (Emphasis added).

It is immediately apparent that the express language of the rule does not require the use of affidavits in order to controvert successfully a motion for summary judgment. In their treatise, Niemeyer and Schuett explain:

Although the rule refers to the need for an "affidavit," the term includes any type of evidence that is admissible at trial. Accordingly, admissions made by a party in a pleading or in response to a request for admissions may be used. Responses to discovery made under oath, such as answers to interrogatories or answers to questions posed in deposition, may be used in support of the motion if the responses

---

**3.** We cannot determine whether the trial court considered all, part, or none of the testimony before the Board or the proffer of testimony from appellants' so-called experts.

would be admissible at trial. A document can be made part of the motion only through affidavit, deposition, or answers to interrogatories that adequately lay the proper foundation for the document's admission into evidence. Authenticity and relevancy of the document must be shown. Attaching documents to a motion for summary judgment without the necessary affidavit is no more acceptable than standing up in open court and attempting to offer the same documents into evidence without a witness or a stipulation.

Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 332 (2d ed.1992). *See also Hartford Accident and Indem. Co. v. Scarlett Harbor Assocs. Ltd.*, 109 Md.App. 217, 263, 674 A.2d 106 (1996) (recognizing that a response to a motion for summary judgment may be supported by "any type of evidence that is admissible at trial"), *aff'd,* 346 Md. 122, 695 A.2d 153 (1997); *Lombardi v. Montgomery County,* 108 Md. App. 695, 713, 673 A.2d 762 (1996) (concluding that appellant's sworn testimony before the Workers' Compensation Commission, which appellant had attached as an exhibit, generated a dispute as to when appellant knew that his hypertension was related to his work as a firefighter); *Vanhook v. Merchants Mutual Ins. Co.,* 22 Md.App. 22, 26–27, 321 A.2d 540 (1974) (explaining that a party may attach affidavits, depositions, answers to interrogatories, pleadings, and stipulations in support of summary judgment motion).

Lipsitt testified before the Board regarding his evaluation of Diesel on August 20, 1994, conducted at the request of the Director of the Montgomery County Department of Animal Control. Mindy Pittell–Hurwitz, the Chairperson of the Board, questioned Lipsitt about his ability to evaluate Diesel. The following exchange is relevant:

[Pittell-Hurwitz]: Mr. Lipsitt, just so that we get a little bit of background on you and your capacity maybe to evaluate this dog, give me just a brief history of how long you've been training dogs, how long you've been evaluating dogs, under what circumstances and how often you've performed tests like this and do evaluations like this.

[Lipsitt]: In answer to the first question, I've been working with animals for about 25 years. I've been training dogs for about 18 years, and I've owned my own business for about 12 years. I mean—

[Pittell-Hurwitz]: By owned your own business, you mean the kennels, the training?

[Lipsitt]: That is correct. I—

[Pittell-Hurwitz]: Approximately how often and under what circumstances do you perform tests such as the one you did in this instance?

[Lipsitt]: I perform this test virtually any day with any dog that I—that comes to me for training.

 At the summary judgment juncture, we believe the motion judge was entitled to consider Lipsitt's testimony. First, the court was not required to disregard Lipsitt's testimony merely because appellants failed to name him as an expert in their answers to interrogatories. *See Braxton v. Faber*, 91 Md.App. 391, 396, 604 A.2d 543 (1992) (concluding that, even at trial, defendant's failure to list expert witness in her answers to interrogatories did not disqualify expert or unfairly prejudice plaintiff, because plaintiff's attorney "participated fully" in deposition of the expert). Moreover, given a trial judge's discretion in permitting a witness to testify as an expert, we cannot say, as a matter of law, that Lipsitt would not so qualify. We are also unpersuaded by appellee's argument that Lipsitt's testimony was irrelevant, merely because his evaluation occurred five days *after* the attack. Lipsitt's testimony was intended to demonstrate "previous experience with agitation" indicating that Diesel was dangerous at the time of the incident. Given the close proximity between the attack and the evaluation, a fact finder could consider the evaluation and infer that the dog had the same traits prior to the incident that he exhibited only days after the attack, and that appellee was aware of them.

In the context of negligence claims, other jurisdictions have had occasion to consider the relevance of evaluations of an animal conducted after an attack. In *Giles v. Russell*, 255

S.C. 513, 180 S.E.2d 201 (1971), the Supreme Court of South Carolina determined that evidence of two attacks by a dog after the initial attack was sufficient to generate the inference that the animal was vicious, despite the lack of evidence concerning the dog's propensities prior to the incident. The Court reasoned that evidence of a subsequent attack "is relevant because it is not likely that the traits of an animal will change rapidly. It is on this theory that evidence of viciousness by an animal subsequent to an accident is admitted to prove vicious tendencies on an earlier date." *Id.* 180 S.E.2d at 203. *See also Sandoval v. Birx,* 767 P.2d 759 (Colo.Ct.App. 1988) (concluding that an animal control officer who observed the dog on a daily basis for almost one month after the attack was competent to give lay testimony concerning the dog's vicious and dangerous disposition); *Finley v. Smith,* 240 Ark. 323, 399 S.W.2d 271, 272 (1966) (stating that "[s]ubsequent conduct is admissible ... to prove the particular animal's dangerous nature," despite the argument that such events would not tend to prove the owner's prior notice). *Cf. Hayden v. Sieni,* 196 A.D.2d 573, 601 N.Y.S.2d 327 (1993) (concluding that a defense expert's testimony that a dog was not vicious was both relevant and admissible when the expert personally evaluated the animal five years after the attack), *appeal dismissed,* 82 N.Y.2d 835, 606 N.Y.S.2d 589, 627 N.E.2d 510 (1993).

Therefore, we conclude that, in the light most favorable to appellants, Lipsitt's testimony was relevant with respect to the dog's behavior and appellee's knowledge of the dog's tendencies. In view of our resolution of the contention as to Lipsitt's testimony, we need not address whether the court was entitled to consider Maida's testimony.

## II.

An owner of an animal may be negligent if the owner fails (1) to exercise reasonable care in controlling the animal or (2) to prevent the harm caused by the animal. *Pahanish v. Western Trails, Inc.,* 69 Md.App. 342, 357, 517 A.2d 1122 (1986); *Slack v. Villari,* 59 Md.App. 462, 470, 476 A.2d 227,

*cert. denied,* 301 Md. 177, 482 A.2d 502 (1984); *see also Restatement (Second) of Torts* § 518 (1977); *Gunpowder Horse Stables, Inc. v. State Farm Auto. Ins. Co.,* 108 Md.App. 612, 633, 673 A.2d 721 (1996) (affirming the principle that "[t]he common law of Maryland recognizes only two causes of action against an owner of a domestic animal: negligence and strict liability"). Stated otherwise, to establish liability based on negligence, the claimant must show that the owner exercised " 'ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence.' " *Slack,* 59 Md.App. at 482, 476 A.2d 227 (quoting *Arnold v. Laird,* 94 Wash.2d 867, 621 P.2d 138, 141 (1980) (en banc)). The requisite degree of control is that which would be exercised by a " '*reasonable person* based upon the total situation at the time . . . .' " *Id.* (Quoting *Arnold,* 621 P.2d at 141).

In determining the requisite degree of control, the past behavior of the animal and the foreseeability of the injuries should be considered. *Slack,* 59 Md.App. at 482, 476 A.2d 227. Accordingly, the owner's knowledge of the propensities of the animal is relevant in determining the degree of control that a reasonable person would have exercised under the circumstances. *Id.*

As we already noted, it is undisputed that appellee knew that Diesel had bolted on at least one prior occasion, although the incident occurred when the dog had not yet completed obedience training. Nevertheless, Diesel was still a young dog when Alex was attacked, and thus did not have a long term history of compliance with his owner's commands. Appellants argue that appellee's awareness of even one prior incident is significant, particularly when coupled with the testimony of Lipsitt and the MCC ordinance. They assert that "it cannot be said as a matter of law that [appellee] acted reasonably in permitting Diesel to walk unleashed." Appellee posits, however, that because Diesel completed an obedience program and did not have a history of bolting, it was not unreasonable for him to walk Diesel without a leash.

The case of *Hammond v. Robins,* 60 Md.App. 430, 483 A.2d 379 (1984), is instructive. There, a dog owner challenged the finding of negligence arising from an incident that occurred when the dog in question was about a year old. At the time, the dog was unleashed, in its owner's yard, while the owner was gardening. Although a chain link fence enclosed the owner's property, the owner inadvertently left the gate open. Consequently, the dog proceeded through the open gate and then failed to respond to the owner's call. Instead, it darted directly in front of the path of the plaintiffs, who were riding a tandem bicycle. As a result of plaintiffs' efforts to avoid the dog, the bicycle toppled over, injuring them.

In concluding that the evidence was sufficient to show failure to exercise the control of a reasonable person under the circumstances, the Court focused on the owner's knowledge of the dog's "tendency to leave the premises ... whenever the opportunity arose, coupled with the opening of the gate at a time when [the owner] was aware that the dog was not under restraint...." *Id.* at 437, 483 A.2d 379. We also concluded that the owner violated the Carroll County Animal Ordinance by not keeping the dog under restraint.

In contrast to *Hammond,* we refused in *Pahanish,* 69 Md.App. 342, 517 A.2d 1122, to hold negligent the unlicensed operator of a horse riding stable when one of his horses kicked the horse the plaintiff was riding, and both the saddle and the plaintiff fell off. We focused on the lack of evidence indicating that "the trail guide was aware of prior mischievous conduct" by the horses involved, or of a defect in the equipment. *Id.* at 359, 517 A.2d 1122. Nor did the evidence establish a failure by the operator to exercise reasonable care in controlling the animals. *Id.* The Court explained:

> An animal owner may be liable under a negligence theory even where he is unaware of any mischievous propensity on the animal's part, if he has failed to exercise reasonable care in controlling the animal or preventing the harm caused by him. *Slack, supra,* 59 Md.App. at 470, 476 A.2d 227. *See also Arnold v. Laird,* 94 Wash.2d 867, 621 P.2d 138, 141 (1980) *(en banc).* In order to be deemed negligent in failing

to prevent the harm caused by an animal, one must be shown to have exercised "ineffective control of an animal in a situation where it would reasonably be expected that injury would occur, and injury does proximately result from the negligence. The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen." *Slack,* 59 Md.App. at 482, 476 A.2d 227 (Alpert, J., dissenting) (quoting *Arnold, supra,* 621 P.2d at 141).

*Id.* at 357–58, 517 A.2d 1122.

■ These cases suggest to us that summary judgment was, indeed, inappropriate as to the negligence claim. When the incident occurred, Diesel was only two years old, and so his behavioral "history" must be considered in that light; certainly, the age of the dog diminishes the significance of the owner's claim that the dog had only bolted once, before completing obedience training, and had never chased after another dog. At the time Diesel ran away, the dog was unleashed, about 15 feet away from appellee, and thus clearly out of arm's reach of the owner. Additionally, notwithstanding the training, the dog did not respond to the owner's command. Further, unlike the owner in *Hammond,* who failed to close the fence gate but had intended to leave the dog in an enclosed area, appellee intended to walk the dog in the open, without a leash. That Diesel was beyond arm's reach, unleashed, failed to respond to appellee's command, and had previously bolted, all combined to generate a material factual dispute as to whether appellee exercised reasonable care in walking the dog without a leash and in controlling Diesel.

When we add the MCC ordinance to the mix, we are all the more convinced that the court erred in granting summary judgment. Appellants claim that appellee violated MCC § 5–26 by failing to restrain or control Diesel, and that this established a *prima facie* case of negligence. MCC § 5–26(a) provides, in relevant part: "An owner must not permit a dog

... to run at large." Further, MCC § 5–1 defines "at large" as an animal "off the premises of its owner and not either leashed or otherwise under the immediate control of a responsible person capable of physically restraining the animal."

In Maryland, the violation of a statute or ordinance does not constitute negligence *per se*. *Pahanish*, 69 Md.App. at 362, 517 A.2d 1122; *Hammond*, 60 Md.App. at 435, 483 A.2d 379; *Whitt v. Dynan*, 20 Md.App. 148, 154–55, 315 A.2d 122 (1974). Nevertheless, the violation of a statutory duty or ordinance may be considered as evidence of negligence under certain circumstances. *Pahanish*, 69 Md.App. at 362, 517 A.2d 1122; *see Hammond*, 60 Md.App. at 435, 483 A.2d 379; *Slack*, 59 Md.App. at 470–71, 476 A.2d 227; *Whitt*, 20 Md.App. at 154–55, 315 A.2d 122. *See also Paramount Dev. Corp. v. Hunter*, 249 Md. 188, 193, 238 A.2d 869 (1968); *Aravanis v. Eisenberg*, 237 Md. 242, 259–60, 206 A.2d 148 (1965). For the violation of a statute or county ordinance to constitute evidence of negligence, the resulting injury must be proximately caused by the violation of the statute, the injury must be to a member of the class that the statute or ordinance was designed to protect, and the injury sustained must be of the type that the statute was intended to prevent. *Pahanish*, 69 Md.App. at 362, 517 A.2d 1122; *Gardenvillage Realty Corp. v. Russo*, 34 Md.App. 25, 34, 366 A.2d 101 (1976).

Appellee contends that he did not violate MCC § 5–26 because: (1) in the first instance, he had control over Diesel, and thus did not have to use a leash; (2) Diesel was not at large until he suddenly and unexpectedly bolted; (3) he did not intentionally or negligently allow the dog to escape; and (4) he lacked knowledge of any vicious tendencies of the dog or the dog's propensity to bolt. Appellee also asserts that we cannot ignore the word "permit" in the ordinance. Despite the fact that Diesel bolted, appellee argues he did not *permit* the dog to do so.

*Slack*, 59 Md.App. 462, 476 A.2d 227, is noteworthy here. In *Slack*, the owner of a Doberman opened a fence gate on the owner's property, in order to allow the unleashed dog to enter

the owner's residence through the kitchen door. The dog walked past the door and proceeded towards the sidewalk, where it growled and snarled at the plaintiff, who was passing by. In an effort to avoid a confrontation with the dog, the plaintiff injured her back. Relying on the Prince George's County Code ("P.G.Code"), which provided that "No owner of any dog shall allow such animal to be at large in the County ....", *id.* at 471, 476 A.2d 227, the plaintiff filed suit against the Slacks. The P.G.Code defined "at large" as an animal "not under restraint and off the premises of his owner." *Id.* It also provided that, to be "under restraint," the animal must be secured by a leash or a lead and under the control of a responsible person, or confined in a vehicle, or within the real property limits of its owner. *Id.*

The jury returned a verdict for the plaintiff. On appeal, appellants claimed that they were not negligent, they did not violate the County's "leash law," and had no knowledge of the dog's propensity to behave as it did. We determined that the dog was not "at large" within the meaning of the statute, because the ordinance did not require use of a leash or lead while the dog was on it owner's premises. *Slack,* 59 Md.App. at 471, 476 A.2d 227. Moreover, the facts did not reveal that the dog was "allowed" to venture from the owner's premises. Nor was there proof that the owner was negligent in failing to control the dog. Thus, we declined to find a violation of the statute. *Id.* at 472, 476 A.2d 227. We said:

> The mere accidental escape of an animal, without proof of the owner's knowledge or negligence, is insufficient evidence to constitute a violation of similar statutes couched in identical terms.

*Id.* Therefore, we held that the court erred in failing to grant the defense's motion for directed verdict as to negligence.

In our view, *Slack* is readily distinguishable from the instant matter. In contrast to *Slack,* the incident here initially occurred when appellee began to walk his dog on the "common grounds" of a multi-family townhouse development where he lived. Clearly, this is not the same as the property of a single

family residence, because of the right of access to the common grounds by other residents. In addition, the owner in *Slack* did not intend for the dog to leave the owner's premises. The same cannot be said here. To the contrary, appellee intended to walk the dog beyond the common grounds. Appellee also conceded that Diesel had, on one previous occasion, bolted in pursuit of a cat.

 We do not suggest that there is an automatic violation of MCC § 5–26 merely because a dog is walked without a leash. But if unleashed, the ordinance requires that the dog must be under the control of a responsible person. Given that the dog was fifteen feet away from appellee, was unleashed, could not be restrained, and then failed to respond to the owner's command, we believe it is for the jury to determine if the owner had the requisite control required by the ordinance.

Moreover, appellee's construction of MCC § 5–26 would allow an owner to avoid a violation of the ordinance merely by asserting that he did not *allow* his unleashed dog to bolt. In our view, his interpretation of MCC § 5–26 would render the ordinance meaningless. It would also contravene a recognized principle of statutory construction. In *Abington Center Associates Limited Partnership v. Baltimore County,* 115 Md.App. 580, 603, 694 A.2d 165 (1997), we said:

> We acknowledge that the plain meaning rule does not necessarily require a reviewing court to ignore or disregard the Legislature's intent and purpose, when that intent and purpose is readily known. Similarly, it does not necessarily compel a literal construction of a statutory provision.

Surely, Alex was a member of the class of persons the ordinance was designed to protect. Moreover, the injury was of the type the ordinance was undoubtedly intended to prevent. *Pahanish,* 69 Md.App. at 362, 517 A.2d 1122. Were we to construe the ordinance as appellee urges us to do, we would have to disregard the obvious purpose of the ordinance.

In sum, viewing the facts and inferences in the light most favorable to appellants, we conclude that the evidence was sufficient to defeat summary judgment with respect to appel-

lee's negligence in failing to exercise reasonable control of Diesel. Therefore, the court erred in granting summary judgment with respect to negligence.

## III.

 Appellants argue that the court erred in granting summary judgment with respect to the strict liability claim. An action based on strict liability arises when the owner of an animal exposes the community to an animal the owner knows is dangerous. *See* Prosser, *Law of Torts* § 76, at 449 (4th ed.1971). Evidence of the owner's negligent failure to control the animal is unnecessary under this theory of liability. *Bachman v. Clark*, 128 Md. 245, 247, 97 A. 440 (1916). Rather, a claimant is required to establish that the owner knew or, by the exercise of reasonable care, should have known of the animal's propensity to cause harm. *Slack*, 59 Md.App. at 473, 476 A.2d 227 (citing *Herbert v. Ziegler*, 216 Md. 212, 216, 139 A.2d 699 (1958)). In other words, the owner must have had notice that the animal was inclined to do the particular mischief that occurred. *Twigg v. Ryland*, 62 Md. 380, 386 (1884).

In *Slack*, 59 Md.App. 462, 476 A.2d 227, the Court refused to hold the owners liable based on strict liability. The record clearly established that the dog had never "growled at, bitten, or previously attacked any person." *Id.* at 476, 476 A.2d 227. We said:

Unlike the negligence theory of recovery, where liability attaches at the time of the occurrence of the injury or damages, "[t]he gist of the [strict liability] action is the keeping of the animal after knowledge of its mischievous propensities."

*Id.* at 473, 476 A.2d 227 (quoting *Twigg*, 62 Md. at 385). Later, writing for the Court in *Pahanish*, 69 Md.App. at 356, 517 A.2d 1122, Judge Bloom explained:

In order to hold an animal owner strictly liable for injuries caused by his animal, a plaintiff must demonstrate the owner knew or, with reasonable care, should have known

that the animal had a propensity to commit the particular type of mischief that was the cause of harm.

*Hamilton v. Smith,* 242 Md. 599, 219 A.2d 783 (1966), is also instructive. There, three dogs attacked a young boy as he rode his bicycle along a private road. Because the dogs had attacked a motorist just five days earlier, the Court of Appeals concluded that the owners had actual knowledge of the dogs' propensities to attack people, *id.* at 607, 219 A.2d 783, and held the owners liable under a theory of negligence. Subsequent analyses of strict liability claims involving animals have, however, incorporated the holding of *Hamilton,* requiring the owner's knowledge of an animal's propensity to cause harm. *See, e.g., Briscoe v. Graybeal,* 95 Md.App. 670, 672, 622 A.2d 805, *cert. denied,* 331 Md. 479, 628 A.2d 1066 (1993); *Pahanish,* 69 Md.App. at 356, 517 A.2d 1122; *Slack,* 59 Md.App. at 473, 476 A.2d 227. *See also Herbert v. Ziegler, supra* (holding animal owner liable, based on constructive knowledge of his horse's propensity to commit harm).

█ In the case *sub judice,* appellee denied knowledge of Diesel's vicious propensities. Appellants essentially relied upon Lipsitt's testimony before the Board to create an inference as to appellee's knowledge of Diesel's dangerous behavioral propensities and thereby to establish an issue of material fact. Such an inference is sufficient at this juncture.

In *Benton v. Aquarium, Inc.,* 62 Md.App. 373, 489 A.2d 549, *cert. denied,* 303 Md. 682, 496 A.2d 682 (1985), involving a delivery person who was bitten by a trained guard dog, the Court said: "[T]he jury could have reasonably inferred that [the defendant] knew or should have known that his animal ... would ... attack the intruder." *Id.* at 378, 489 A.2d 549. Therefore, we concluded that the question as to the dog's vicious propensity should have been submitted to the jury. *Id.* In distinguishing *Slack,* we said:

> [W]hat makes this case crucially different from *Slack,* is
> that there was sufficient evidence to allow the jury to infer
> that [the dog] did exactly what he was trained to do when

[the plaintiff], who was a stranger to the dog, walked into the warehouse.

*Id.* Ultimately, however, we affirmed the decision of the trial court to direct a verdict for the defendants, because the plaintiff assumed the risk by entering a building after viewing several obvious "Beware of Dog" signs.

 To be sure, the fact that Diesel is a Rottweiler is not sufficient to establish that he is vicious. As we said in *Slack,* 59 Md.App. at 476, 476 A.2d 227, "[T]he mere fact that the dog that injures a plaintiff belongs to a breed with an unsavory reputation, absent evidence that the *particular dog* was of a violent nature, is insufficient to prove scienter." *See also McDonald v. Burgess,* 254 Md. 452, 458–60, 255 A.2d 299 (1969). Nor does evidence of a dog's propensity to attack another animal constitute notice that the dog is similarly inclined to attack human beings. *See Slack,* 59 Md.App. at 474–75, 476 A.2d 227. Nevertheless, when we view all of the facts and inferences in the light most favorable to appellants, we conclude that a sufficient factual dispute exists to justify denial of appellee's summary judgment motion as to strict liability. It follows that the court erred in granting summary judgment with respect to this claim.

**SUMMARY JUDGMENT VACATED WITH RESPECT TO COUNTS I AND II. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY FOR FURTHER PROCEEDINGS.**

**APPELLEE TO PAY COSTS.**